# CASES DETERMINED

IN THE

# ST. LOUIS COURT OF APPEALS.

## OCTOBER TERM, 1879.

STATE OF MISSOURI, Respondent, *v.* HENRY J. REDE-
MEIER, Appellant.

### November 4, 1879.

1. Proof of insensibility on the part of the accused to the consequences of his act, and of absence of apparent motive for the homicide, is not such evidence of insanity as will throw on the State the burden of affirmatively showing that the accused was sane at the date of the homicide.

2. An instruction which declares that insanity "means such a perverted and deranged condition of the mental and moral faculties as renders a person incapable of distinguishing between right and wrong, and makes him unconscious at times of the act he is about to commit," is not erroneous in a murder case where the defence is insanity.

3. Newly discovered evidence of insanity, of the same character as that given, and which is merely cumulative, is not a sufficient ground for disturbing a verdict of murder in the first degree.

APPEAL from the St. Louis Criminal Court.
*Affirmed.*

A. N. MERRICK, for the appellant: The time, place, and circumstances surrounding the strange transaction, taken in connection with all the evidence going to show the deranged mental condition of the defendant, as well as the positive

and direct evidence of the witnesses as to his insanity, entitled him to a verdict of acquittal on all the evidence in the case. — *The State* v. *Mansfield*, 41 Mo. 470 ; *The State* v. *Marshall*, 47 Mo. 378 ; *The State* v. *Packwood*, 26 Mo. 340 ; *The State* v. *Connell*, 49 Mo. 282. The definition of the term "insanity" is incorrect, and does not furnish the true test for the consideration of the jury. —*The Commonwealth* v. *Rogers*, 7 Metc. 500 ; *The State* v. *Felter*, 25 Iowa, 67 ; *United States* v. *Holmes*, 1 Cliff. 98 ; 2 Bishop's Cr. Law, sects. 381, 382. The rule as to the burden of proof in cases where insanity is interposed as a defence, and the degree of proof sufficient to authorize a jury to find insanity, is not correctly stated. — *The State* v. *Crawford*, 11 Kan. 32 ; *Wright* v. *The People*, 4 Neb. 407 ; *The State* v. *Bartlett*, 43 N. H. 224 ; *Chase* v. *The People*, 40 Ill. 224 ; *Hopps* v. *The People*, 31 Ill. 385 ; *Polk* v. *The State*, 19 Ind. 170 ; *Stevens* v. *The State*, 31 Ind. 485 ; *The People* v. *Garbutt*, 17 Mich. 9 ; *Smith* v. *The Commonwealth*, 1 Duv. 224 ; *The State* v. *Johnson*, 40 Conn. 136 ; *The Commonwealth* v. *McKee*, 1 Bennett & Heard's Ld. Cr. Cas. 295, and note. The court erred in making as the only *test* of criminal responsibility the ability to distinguish between right and wrong. — *The State* v. *Jones*, 50 N. H. 369 ; *The People* v. *Pine*, 2 Barb. 556 ; *The Commonwealth* v. *Mosler*, 4 Barr, 267 ; Trial of Freeman, 469. The court erred in refusing to grant a new trial on the ground of newly discovered, important, and material evidence. — *Anderson* v. *The State*, 43 Conn. 514 ; *The State* v. *Evans*, 65 Mo. 574.

L. B. BEACH, for the respondent : "Inadequacy of motive is no defence. Acts are the language of motives, as words are of thought." — Browne's Med. Jur. of Insanity, sects. 17, 18, 20, 138 ; Broom's Comm. 866, note ; 1 Whart. & Stille, sects. 399–405. Again, insanity is a simple question of fact, to be submitted to and determined by the

jury.— *The State* v. *Holme*, 54 Mo. 153; *The State* v. *Smith*, 53 Mo. 267; *Baldwin* v. *The State*, 12 Mo. 223. The smallness of the motive in relation to the gravity of the act proves nothing but a carelessness of consequence or an expectation of immunity from punishment.— Browne's Med. Jur. of Insanity, sect. 138; 1 Whart. & Stille, sect. 302; *Bovard* v. *The State*, 30 Miss. 818. Newly discovered evidence which is merely cumulative is no ground for a new trial in a criminal case. —*The State* v. *Butler*, 67 Mo. 59; *Rose* v. *The State*, 14 Mo. 348; *The State* v. *Larimore*, 20 Mo. 425; *The State* v. *Stumbo*, 26 Mo. 306; *The State* v. *Sawyers*, 58 Mo. 585; *The State* v. *McLaughlin*, 27 Mo. 111.

LEWIS, P. J., delivered the opinion of the court.

The defendant was convicted of murder in the first degree. His defence was insanity. The facts shown in the evidence were substantially as follows: The deceased, Franz Vosz, was a stone-mason, and was engaged, with other workmen, in building the foundation for a house in North St. Louis. The defendant sat a few steps distant from them, looking on, while the deceased and another were in the act of lifting a large stone, to be put in its place. Defendant suddenly rose from his seat, without warning, passed by the other workman, and placing a pistol at the back of the head of Vosz, shot him dead. When Vosz had fallen, the defendant, saying, "I am afraid he is not dead yet; I must give him another," attempted a second shot, when the pistol missed fire. He pulled the trigger a third time, shooting the dead or dying man in the left breast. Pointing his pistol at the other workman, defendant said to him, "If you do not stand still, I will shoot you too." He then walked leisurely away, and was arrested within a few blocks from the scene of the homicide.

There was no direct testimony to the effect that, prior to the homicide, the defendant had ever been considered insane.

His counsel insists that the incidents and surroundings of
the fatal act itself are demonstrative of insanity.     Much
stress is laid on the apparent absence of any motive for the
deed, on its defiant publicity, and on the defendant's total
heedlessness of consequences, at and after the fatal act.
When asked why he had killed his victim, he gave different
reasons at different times.     To one he said that he had
" had it in " for Vosz for about two years ; that he had
once before sought to kill him, but failed ; and, now that
he had a good opportunity, he made sure of it with powder
and ball.     To another he said, immediately after the kill-
ing, " That is the way I treat them when they don't pay
me."     It was in evidence that there had been no business
transactions of any sort between them, and that Vosz owed
nothing to the defendant.  At another time he said that he
had shot Vosz because he was old enough to die, and ought
not to live any longer ; that when he himself should reach
the same age, he hoped somebody would kill him.     On other
occasions he alleged that Vosz was about to throw a
stone at him, and that he shot in self-defence.     There was
testimony showing that defendant had been a man of silent
and solitary habits, sitting apart and refusing to converse
with his friends, and that he sometimes complained of pains
in his head.     It was shown that he seemed to have no
rational appreciation of the enormity of his offence, or of its
legal consequences.     When first arraigned, he promptly
pleaded guilty, and persisted in the plea when it was ex-
plained to him that the sentence of death must follow.
Some other incidents, of generally similar character, were
introduced in evidence as tending to show mental aberra-
tion.

On the other hand, a number of witnesses testified that
they had known the defendant intimately for many years,
and had never seen or heard of any manifestations in him of
a deranged intellect.     His mother testified that he had
always conversed with her intelligently, had studied at

school, and acted generally like other boys through all his life, and, except that he sometimes complained of a pain in his head, she did not attempt to recall any fact concerning him that might tend to show a diseased mind. It was shown that on the day of the homicide he had exhibited a pistol to a friend, remarking that he intended to kill somebody on that day. Whenever asked about the homicide afterwards, he was able to give a clear and circumstantial account of the act, and of every fact connected with it. About two years before, the deceased had called up some friends in a saloon to drink beer with him, and refused to include the defendant, who was present, telling him that he was young enough to work and pay for his own beer. It did not appear, however, that the defendant on that occasion manifested any anger or hostile feeling. It was shown that no change of character or of habits had occurred with the defendant at any time, other than such as naturally pertained to the advance from youth to maturity. He was a cigar-maker by trade, and was shown to have been a faithful and intelligent workman, with no peculiarities or habits that would attract attention, other than a frequent indisposition to converse or mingle socially with his fellow-workmen. It is not here intended to give even an outline of all the testimony introduced on either side. Such prominent facts only are mentioned as may serve to furnish a fair general idea of the whole.

Three witnesses were introduced as experts on the subject of insanity. One, for the defence, was a physician in general practice, who had studied the subject with interest for many years, but had not made it a specialty. He had never had charge of an institution for the insane, but had, in his private practice and as a city physician, had under his care and treatment about fifty insane patients. He had personally examined the defendant with reference to his mental codnition, and was of opinion that a taint of

insanity was present. Upon a partial hypothetical case stated to him, from the testimony given by several of the witnesses, he considered there were at least strong grounds for a suspicion of insanity.

The two other experts were introduced on the part of the State. One is professor of diseases of the mind and nervous system in a medical college, and usually lectures on those subjects two or three times per week. He has been for fourteen years in charge of St. Vincent Lunatic Asylum, and was for one year consulting physician of the St. Louis County Lunatic Asylum. He has had under his care, for fourteen years, an average of one hundred and fifty insane patients daily, and at certain times during that period had five hundred patients under his charge daily. It has been his constant occupation to be with the insane. He has given the better part of his medical career to the study of insanity and the diseases of the nervous system, making these his specialties. He has testified as an expert in every celebrated law-case in the city of St. Louis in which insanity was alleged, since the year 1865. A hypothetical case, framed in writing, upon all the material testimony submitted on either side, was put to this witness for his opinion on the evidences of insanity in the defendant at the time of the commission of the homicide. He answered that, in his opinion, the defendant was sane. His answer was accompanied with a full explanation of the scientific grounds on which it was supported.

The second expert introduced for the prosecution has made the study of insanity a specialty for the past eleven years. He was superintendent and physician of the State Insane Asylum at Fulton for about six years. He has treated about three thousand insane patients, the average, at one period, being about three hundred and fifty per month. Upon the same hypothetical case as put to the previous witness, he could discover no such evidence as would be

required to establish the existence of mental aberration. His answer was, upon cross-examination, supplemented by a thorough elucidation of its scientific basis.

The court instructed the jury at length upon the law of the case. The only instructions of which complaint is made were those relating to the question of insanity, as follows : —

"As a defence to this prosecution, the defendant, by his counsel, has interposed the plea of insanity. He says that the act which he is alleged to have committed is *not* an act for which he can be held criminally responsible ; in other words, that the act was and is excusable in law, because at the time of its commission, as charged, he was insane.

" The term 'insanity,' as used in this defence, means such a perverted and deranged condition of the mental and moral faculties as renders a person incapable of distinguishing between right and wrong, and makes him unconscious, at times, of the nature of the act he is about to commit. Such insanity, if proved to the reasonable satisfaction of the jury to have existed at the time of the commission of the act, is in law an excuse for it, however brutal or atrocious it may have been.

" The law presumes every person to be of sound mind, until the contrary is shown ; and when, as in this case, insanity is interposed as a defence, the fact of the existence of such insanity at the time of the commission of the offence charged must be established by the evidence, to the reasonable satisfaction of the jury, and the burden of proving this fact rests with the defendant.

" The opinions on questions of insanity which have been given by the medical experts are testimony before you, and are subject to the same rules of credit or discredit as the testimony of other witnesses. The opinions neither establish nor tend to establish the facts upon which they are based. Whether the matter testified to by the witnesses in the cause as facts are true or false, is to be determined by

the jury alone.  Neither are the hypothetical questions put to the medical experts by the counsel in the cause, evidence of the truth of the matters stated in these questions.

"Although the jury may believe, and find from the evidence, that the defendant did commit the act charged upon him, yet if they further find that at the time he did so he was in such an insane condition of mind that he could not distinguish between right and wrong, then such act was not malicious, and the jury should acquit him of the crime charged, on the ground of insanity, and so say in their verdict.

" To establish his insanity, positive or direct testimony is not required.  Circumstantial evidence which reasonably satisfies. the minds of the jury that the defendant was, at the time the alleged shooting was done, incapable of distinguishing between right and wrong, or to comprehend the nature of the act, will be sufficient.

" The jury are the sole and exclusive judges of the degree of credit which shall be given to the testimony in the case, and have the right to receive and credit as true, or to reject and discredit as untrue, the whole or any part of the testimony of any witness in the cause.  If, after the jury have carefully taken into account and consideration all the evidence in the case, there remains in their minds a reasonable doubt of the guilt of the defendant, the law, in its humanity, gives to him the benefit of that doubt, and they should acquit. But to authorize an acquittal on the ground of doubt alone, such doubt should be reasonable and substantial, and not a mere guess or conjecture of his ' probable innocence.' "

It is objected that the court's definition of the term "insanity" is incorrect, and does not furnish the true test for the consideration of the jury.   Defendant's counsel does not inform us in what particulars the definition is incorrect, nor does he give us what, in his opinion, would be a true definition.   He refers us to several authorities wherein a different phraseology was employed, but even these differ among

themselves in merely verbal particulars. It is agreed among the most writers that no standard definition of insanity exists. We do not find that the one employed in this case fails to harmonize, in substance, with those elsewhere accepted upon judicial authority, and are unable to perceive in what way it could have prejudiced the defendant's case.

Defendant's counsel argues that the rule as to the burden of proof in cases where the defence of insanity is employed, was incorrectly stated by the court. His ingenious argument, illustrated by pertinent authorities, may be summarized thus : Although the presumption exists that every person of sufficient age to understand the nature of his acts is of sound mind ; and although, in order to sustain the plea of insanity, this presumption must be removed by proofs ; yet, when the facts and circumstances are all in, the burden rests where it was in the beginning — upon the State — to prove its case beyond a reasonable doubt.

As a mere philosophical speculation, in the abstract, the proposition is undoubtedly true ; yet it has no practical application to the instruction given in that connection. It cannot be pretended that, upon the mere suggestion of insanity as a defence, the burden is thrown upon the State to make affirmative proof of sanity beyond a reasonable doubt. This, however, must logically follow, if counsel's argument has any application here. He insists that in the State's testimony in chief there were proofs of defendant's insanity, and hence the burden never fell upon the accused to prove that defence. But that such proofs existed in the State's testimony was a mere inference in the mind of the advocate. It arose from the apparent absence of motive for the homicidal act, and from the defendant's insensibility as to the consequences. If such inferences are to be accepted as proofs for the defence, it follows that in every murder case the State must prove not only the fact of the killing, but also that there was a sufficient motive for it,

and that the perpetrator was deeply concerned for its results. The simple truth is, as to this question, that the State's duty to make out its case beyond a reasonable doubt is already fulfilled in the legal presumption of the defendant's sanity. The presumption, standing alone, sufficiently excludes the reasonable doubt as to that fact. The burden of proving insanity is thus thrown upon the defence, as the instruction declares. *The State* v. *McCoy*, 34 Mo. 531 ; *The State* v. *Klinger*, 43 Mo. 127.

Counsel for the defendant furnishes us with an elaborate brief, in which every point that could possibly be raised for his client upon this record is strongly presented. We have carefully examined them. They are too numerous to be separately discussed within the limits of this opinion. Upon the whole record, we find the case to have been presented as fairly as possible to the jury. Much of the testimony intended to establish insanity in the defendant may well have been considered by the jury as showing only a depraved indifference to the value of a human life, with a cunning simulation for the purpose of escaping punishment. The testimony given by the experts was singularly lucid, impartial, and satisfactory. That their conclusions were purely arbitrary, it seems impossible to believe. They were fortified by the deductions of a science to which the witnesses had devoted many years of constant study and practice. We have carefully compared the hypothetical case presented them with the rest of the record, and find it a complete *résumé* of all the material evidence on either side of the case. Notwithstanding the earnest protests of counsel against the finding upon the issues of fact, we cannot see how or why, if we were to weigh the testimony nicely, we should declare a preponderance against the verdict of the jury.

There was no error in the refusal of a new trial upon the affidavits presented with the defendant's motion. The so-

called newly discovered testimony was of the same general
character with that which was heard upon the same points
in the trial.    It was purely cumulative on the theory of in-
sanity, and was therefore entitled to no weight against the
verdict rendered.    All the judges concur in affirming the
judgment.