## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

MARCH TERM, 1904.

*(Continued from Volume 105.)*

WILLIAM B. KING, Appellant, v. EXCHANGE BANK, Respondent.

Kansas City Court of Appeals, February 15, 1904.

1. **BANKS AND BANKING: Bailment: Liability: Negligence.** When a bank gratuitously undertakes to deliver a check and take a receipt therefor it is only liable for gross negligence in identifying the payee.

2. ———: ———: **Negligence: Evidence.** The evidence reviewed and the plaintiff is held negligent in directions given defendant bank and the defendant is found free of any kind of negligence in the discharge of its duties as bailee of the plaintiff.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

*H. W. Currey* for plaintiff.

(1) The respondent's liability is, probably, to be measured by the law governing that kind or class of

(1)

bailments, designated mandatum or mandate.  Eddy v. Livingston, 35 Mo. 487; Frengbrure v. Ingler, 17 Mass. 233; Zane on Banks and Banking, sec. 171, p. 293; Schouler on Bailments, sec. 14; Lawson on Bailments, 13 and 64.  (2)  A mandate may be for the interest of the person granting it alone; for the joint interest of both parties; for the interest of a third person; for the interest of a third person and the party granting it; or, for the interest of the mandatory and the third person; and, in this case the mandate was for the benefit of the mandatory—respondent bank—and the third person —W. M. Boles—and the bank was a bailee for hire, the consideration for the acceptance of the duty of delivering appellant's draft to W. M. Boles being the advantage which the bank obtained from the right of exchange.  Bank v. Bank, 112 U. S. 288; Newhall v. Page, 10 Gray 366; Lawson on Bailments, sec. 32, pp. 66-67; Lawrence v. McCalmont, 2 How. 426; Wear v. Gleason, 52 Ark. 364; Tomblee v. Koelling, 60 Ark. 62; Sandefur v. Mattrugley, 16 Ark. 237.  (3)  The respondent bank by accepting the appellant's draft for $390, with instructions to deliver the same to W. M. Boles, there agreed: (a)  To receive the draft as the property of King.  (b) To obey the instructions of King in respect to delivering the draft to Boles.  (c)  To deliver the draft to no other person than W. M. Boles.  (d)  And on failure to be able to deliver the draft to W. M. Boles to return the same to William B. King.  Lawson on Bailments, sec. 18, p. 38.  (4)  If the relation between the defendant bank  and appellant is not that of bailor and bailee, defendant's duty towards the plaintiff was at least that of a trustee without reward.  Coleman v. Lipscomb, 18 Mo. App. 443.  (5)  The conversion of the draft took place when the bank took the forged receipt, witnessed by J. P. Stewart, cashier, and forwarded the same for collection.  Williams v. Wall, 60 Mo. 318; Durky v. Rudder, 80 Mo. 400; Hamlin v. Carruther, 19 Mo. App. 567; Keller v. Garth, 45 Mo. App. 332.  (6)  It was

no defense that the respondent bank paid the $390 out to the wrong person, and the delivery of the draft, to the wrong person, although the bank might have thought it was delivering it to the right person, rendered the bank liable regardless of the question of due care or the degree of negligence. Lawson on Bailments, sec. 22, pp. 46, 47; Dufour v. Mephan, 31 Mo. 577; Jenkins v. Bacon, 111 Mass. 373; Ganley v. Bank, 98 N. Y. 32; Combler v. Koeling, 60 Ark. 62; McGwinn v. Butler, 31 Iowa 160; Hall v. Railroad, 14 Allen 439; Keown v. Manley, 49 N. Y. 492; Keys v. Bank, 52 Mo. App. 323; Dyas v. Handson, 14 Mo. App. 363; Busch v. Railroad, 3 Mo. App. 62; Wear v. Gleason, 52 Ark. 364. (7) Plaintiff, by proving the delivery of the draft to the respondent bank with instructions to deliver the same to W. M. Boles; and the failure of the bank to deliver the same to W. M. Boles; and, a demand for the return of the draft and proof that the defendant had converted the same, made out a prima facie right to judgment; and, when the prima facie case was thus made, it devolved on the defendant to acquit itself of blame and show affirmatively that it was guilty of no negligence. Dixon v. McDonnell, 92 Mo. App. 479; Rayl v. Kreilich, 74 Mo. App. 246 and cases there cited in separate opinion of BANK, J.; Gitt v. Watson, 18 Mo. 274; Flourney v. Warden, 17 Mo. 441; State v. Moore, 61 Mo. 279.

*Redding & Farris* for respondent.

(1) The objection to the introduction of any testimony by plaintiff should have been sustained for the reason that the petition does not state a cause of action. Under the allegations of the petition, the defendant was the bailee of the plaintiff, and had legal possession of the property, and as such could not be charged with conversion until after a demand had been made. The petition fails to allege a demand. The demand fixes the

liability.   Emerick v. Chesron, 90 Ind. 47; Zuck v. Culp, 59 Cal. 142; McClain v. Huffman, 30 Ark. 428; Dixon v. McDonald, 92 Mo. App. 479; Aylor v. McMunnigal, 66 Mo. App. 635.   (2)   Under the evidence in this case defendant was a gratuitous bailee.   Plaintiff informs defendant that if there are any charges they must be paid by Boles, thereby settling all doubt as to the liability of plaintiff for compensation in this matter.   (3)   Being a gratuitous bailee defendant would only be liable for gross negligence.   McClean v. Rutherford, 8 Mo. 109; Huxly v. Hartzell, 44 Mo. 370; Mason v. St. Louis Union Stock Yard Co., 66 Mo. App. 93.

SMITH, P. J.—The case here is about this:· The plaintiff drew his check on a New York bank in favor of W. M. Boles for $390 which with a blank receipt to be signed by the payee in the check he inclosed in a letter to defendant.   In this letter the plaintiff told the defendant that, ''my correspondence in this matter has been with O. C. Sharp representing Mr. Boles.   Please deliver my draft (check) to Mr. Boles or to Mr. Sharp on his order upon Mr. Boles signing the receipt inclosed.   Any charges you may make are to be paid by Mr. Boles.''   The defendant acknowledged the receipt of the check and stated that as soon·as Mr. Boles came in it would have him sign the receipt and return to plaintiff.   Later on, the defendant inclosed to plaintiff the receipt signed by W. M. Boles.

It appears that in 1888 the plaintiff and W. M. Boles, who seem to have been lawyers and claim agents, were jointly interested in prosecuting before the court of claims at Washington an ''Indian depredation claim.''   The plaintiff resided at Washington and Boles at Webb City, and afterwards at different places in Kansas, Texas and Arkansas.   It seems that in 1898 the depredation claim was allowed and paid and the plaintiff on August 31, 1898, wrote a letter to Boles at Webb City, in this State, informing him of the fact and further that

the court of claims had allowed a fee of $1,490 and had declined to allow more. The plaintiff requested to know of Boles if whether or not under all the circumstances referred to by him, one-fourth of the fee so allowed by the court of claims would not satisfy him. To this letter the plaintiff received the response of one O. C. Sharp saying that, "yours addressed to W. M. Boles of this city has been handed to me for answer and attention. . . . From his statement your letter is unintelligible. Hence, kindly answer me the following queries. . . ." By these queries it was sought to ascertain what interest Boles had in the $1,490 fee and what he meant by offering him "one-fourth of the fee" in full settlement of his share in the fee, etc. It was further stated in the concluding part of the letter that, "Mr. Boles is quite old and does not understand the situation of the case and inasmuch as I have asked questions will you kindly answer them *seriatim*," etc.

Plaintiff replied answering the several queries as requested and saying that he would give him one-fourth of the fee referred to. On receipt of this Sharp wrote plaintiff that, "after conference with Mr. Boles I will say please send me draft for $390, together with such voucher as you deem proper and I will execute and return to you. . . . Make draft payable to my order so that I can protect myself in a small fee, etc. . . . Should you prefer, you may send the $390 draft to the Exchange Bank here instead of direct to me." On receipt of this, the plaintiff wrote to Sharp that he had sent the draft to the Exchange Bank, as requested, and a "receipt in full to be signed by Mr. Boles. Kindly have the receipt signed and the bank will deliver the draft to Mr. Boles, or to you on his order. The defendant sent the check to its New York correspondent for collection to whom it was paid. When defendant was advised of the payment of the check it inclosed Boles' receipt to the plaintiff, and on the order of W. M. Boles it paid the amount of the check so collected to Sharp.

Nearly two years after the transaction just referred to had taken place, W. H. Boles—the true W. H. Boles—wrote to plaintiff from Eureka Springs, Arkansas, inquiring about the depredation claim, etc. The plaintiff answered, telling him that he must have forgotten that the matter had been settled long ago. Mr. Boles in reply wrote him that he had never received a cent for his part of the fees and that was the first intimation he had had that the claim had been settled. And in another letter he wrote plaintiff that the whole Webb City transaction was a forgery. The plaintiff then wrote to defendant, the Exchange Bank, referring to the check transaction and stating that, ''it now turns out that the entire transaction was fradulent. Our correspondence in the matter, to which his payment relates, has been with William H. Boles, formerly residing in Webb City but at the present time president of the Ozark Mining Company of Eureka Springs, Arkansas. While at Webb City in 1892 and 1893 he was in business, we believe, as a real estate agent. He removed from your city about 1894, and a letter of ours addressed to him August 31, 1898, without knowledge of his removal, came into the hands of one O. C. Sharp, who on September 6 wrote us a letter of which inclosed is a copy, and the result was the payment of the sum of $390 to Mr. Sharp.'' The letter concludes by requesting an investigation, prosecution, etc., of Sharp and the person impersonating W. H. Boles, etc. To this the defendant wrote that it would do anything it could towards the detection and punishment of the parties to the fraud. Sharp, in the meantime, had left the county and his whereabouts became unknown.

The plaintiff made some settlement with the true W. H. Boles of the fee matter and then brought this action against the defendant, alleging in the petition, amongst other things, that the said draft was never delivered to W. H. Boles by defendant and that by reason of the negligence and carelessness of defendant in fail-

ing to deliver the said check to said W. H. Boles the plaintiff lost the sum of $390, etc. It was further shown by the evidence that Stewart who was the defendant's cashier and who acted for it in the transaction already referred to was acquainted with W. H. Boles, the person for whom plaintiff intended the check, and that he had some acquaintance with Sharp prior to said transaction. The plaintiff made an effort to show that Sharp was a man in bad repute in Webb City and that this was known to Stewart, but this was an abortion—a failure. The case was tried before the court. The finding and judgment were for defendant to reverse which this appeal is prosecuted.

The plaintiff in his letter to defendant and inclosing the check and requesting it be delivered to Mr. Boles or to Mr. Sharp on his order, expressly stated that, "any charges you may make in this matter are to be paid by Mr. Boles and not by me," so that it is clear that the defendant was as to plaintiff not a bailee for hire but a gratuitous bailee. The defendant accepted the trust with the express understanding that the duties it imposed were to be performed by it as a mere gratuity so far as the planitiff was concerned. In Shields v. Blackburn, 1 H. Black 158, it was said that, when a bailee undertakes to perform a gratuitous act, from which the bailor alone is to receive the benefit, the bailee is only liable for gross negligence, but if a man *gratuitously undertakes to do a thing to the best of his skill* when his situation or profession is such as to imply skill, an omission of that skill is imputed to him as gross negligence. And this view of the law is adopted by Mr. Story who states that at common law when the contract is wholly gratuitous and for the benefit of the mandator, the mandatory is bound only to slight diligence and is only responsible for gross neglect, citing as adopting this rule Tompkins v. Saltmarsh, 14 S. & R. 275; Beardsley v. Richardson, 11 Wend. 25; Foster v. Essex Bank, 17 Mass. 497. This rule has been adopted in this

State:   McLean v. Rutherford, 8 Mo. 110; Eddy v. Livingston, 35 Mo. 487; Wiser v. Chesley, 53 Mo. 547; Funkhauser v. Ingles, 17 Mo. App. 1. c. 238; Mason v. Stock Yards, 60 Mo. App. 1. c. 98.   Accordingly, the defendant by his gratuitous undertaking could not be held liable to the mandator plaintiff only for gross neglect in the performance of that undertaking.

Sharp requested the plaintiff to send the check to the defendant bank.   The plaintiff complied with this request and so notified Sharp.   Under the letter inclosing the check the duty of the defendant was plain and simple.   It was only required to deliver the check to "Mr. Boles or to Mr. Sharp on his order upon Mr. Boles signing the receipt inclosed."   After Sharp had been notified that the check had been sent to the bank he, in company with a man whom he represented to the defendant to be W. H. Boles, the payee in the check, called at defendant's bank and asked for and was shown the check and receipt and thereupon Boles offered to and was permitted to indorse the check and sign the receipt by making his mark, the cashier Stewart and Sharp writing their names as attesting witnesses thereto.

There was no doubt that O. C. Sharp, who introduced Boles, was the same person mentioned in the letter of plaintiff to defendant inclosing the check. The defendant was told in that letter that Sharp represented Boles.   Defendant's cashier was personally acquainted with Sharp and when he represented that the man accompanying him was his client Boles, the payee in the check, it was but natural and reasonable that the defendant's cashier should, under the circumstances, without question accept as true such representations. There was nothing in the reputation of Sharp which was known to defendant's cashier, or in the nature of the transaction, as far as was disclosed by the correspondence, which was in the least calculated to excite the suspicions of defendant's cashier as an ordinarily prudent business man.   He had every reason to believe that

Sharp was the man with whom he was requested to deal as the representative of Boles. As to him, there could be no mistake. And when he brought a man into the bank and introduced him as W. H. Boles, the payee in the check whom the plaintiff wrote was represented by Sharp, is the defendant to be declared guilty of gross or even slight negligence for not disputing the representation of Sharp as to the identity of the man he introduced as Boles, and for not requiring further proof of such identity?

The letter of Sharp to plaintiff in which he made the numerous inquiries respecting the "Indian depredation claim," the fee, etc., was of such a character as it seems to us ought to have aroused the suspicions of the plaintiff as to whether the Boles for whom Sharp wrote was his associate in the prosecution of the depredation claim and with whom he had been carrying on a correspondence extending through many years. This letter showed very clearly that the Boles for whom Sharp wrote was in utter and total ignorance of the "depredation claim" and the fee to be received therefor. It is inconceivable that the Sharp letter did not excite doubt and suspicion in the mind of plaintiff as to whether the Boles for whom the letter pretended to have been written was not an imposter. Such doubts and suspicions would, it seems to us, have arisen in the mind of any but the most stupid and heedless. No man or ordinary caution and prudence after the receipt of such a letter, and under all the facts and circumstances as known to plaintiff, would have sent the check to the defendant bank to be delivered to the Boles represented by Sharp without writing, as he did after the commission of the fraud, to the defendant that the Boles for whom the check was intended was William M. Boles who resided in Webb City in 1892 and 1893 and was in business as a real estate agent, and requesting that before delivering the check defendant should ascertain whether or not the Boles Sharp was representing was the Boles who so lived

in Webb City at the time named and who was a real estate agent during those years. If the plaintiff himself had taken the precaution that any man of ordinary prudence, whether lawyer or layman, would have taken under such circumstances, the fraud would not have been perpetrated. If plaintiff had inclosed Sharp's letter of inquiry to defendant, or had required the defendant to satisfy itself before delivering the check that the Boles whom Sharp represented was the Boles who had lived in Webb City in 1892 and 1893, during which years he had been engaged in the real estate business, and who had been the associate of plaintiff in the prosecution of the Indian depredation claims, the fraudulent scheme would have been frustrated. We can not resist the conclusion that the loss sustained by the plaintiff resulted more from his own carelessness than from that of the defendant.

But aside from any carelessness of the plaintiff, we can discover nothing in the facts which the evidence conduced to prove that would justify a finding that the defendant was guilty of any kind of negligence in the discharge of its duties and functions as bailee for which it should be held liable.

And we think it is immaterial upon what theory the court proceeded in the consideration of the case; and as to whether the court refused to consider the case upon any one of the theories embodied in the declarations of law requested by the plaintiff is equally immaterial, since we can not discover that the plaintiff was entitled to recover on any possible theory authorized by the evidence.

It follows from this that the judgment must be affirmed. All concur.