AGNES K. PETERSON, Respondent, v. NATIONAL COUNCIL OF THE KNIGHTS AND LADIES OF SECURITY, Appellant.

St. Louis Court of Appeals, April 6, 1915.

1. FRATERNAL BENEFICIARY ASSOCIATIONS: Beneficiaries: Members of Family: Facts Stated. In an action on a death benefit certificate issued by a fraternal beneficiary association, which limited beneficiaries to "the family, heirs, blood relatives . . . . . or persons dependent upon the member," to reform the certificate, in which plaintiff was wrongfully designated as a dependent of insured, instead of as a member of the family, and for judgment for the amount of insurance specified therein, it was shown that after the death of the wife of insured, when he was alone and practically destitute, plaintiff, who had always known him and regarded him as a brother, invited him to live at her home, and he moved his trunk and personal effects there, and thereafter continued to live as a member of the household; paying no board, until his removal to a hospital, where he died, except for a few days, when he rented a room near a factory where he had obtained employment, during which time he did not move his trunk from plaintiff's home and continued to take part of his meals there. *Held,* that the

word "family," as used in the certificate, signifies a collective body of persons living in one house or under one head or manager or one domestic government, and that plaintiff and insured were members of the same family, within this definition, after the latter came into and became a part of the domestic circle of which plaintiff was a member, notwithstanding the fact that insured was not the head of the family and that plaintiff was not dependent upon him for support; *held, further,* that the family relation continued until the death of the insured; and hence it is *held* that plaintiff was entitled to recover.

2. **DOMESTIC RELATIONS: "Family:" Definition.** The word "family" is one of more or less flexibility, susceptible of different meanings according to the connection in which it is used. It may be of narrow or broad meaning, as the intention of the parties using it, or of the law, may be made to appear. In its ordinary and primary sense, it signifies a collective body of persons living in one house or under one head or manager or one domestic government, and unless the context of a document in which it is used manifests a different intention, it is usually given this meaning.

3. **INSURANCE: Construction of Policy.** A word used in an insurance policy should be regarded as having been employed in its ordinary and popular sense—the sense in which members of the order would naturally be supposed to understand it.

4. ———: ———. The law looks with disfavor upon the forfeiture of a contract of insurance which has been fully performed on one side by the payment of all premiums or assessments thereon, to the death of insured.

5. **FRATERNAL BENEFICIARY ASSOCIATIONS: Beneficiaries: Members of Family: Estoppel.** The holder of a benefit certificate in defendant fraternal beneficiary association, which limited beneficiaries to "the family, heirs, blood relatives . . . . . or the persons dependent upon the member," after the death of his wife, when he was alone and practically destitute, moved his trunk and personal effects to the home of plaintiff, who had always known him and regarded him as a brother and who invited him to make his home there. Thereafter, he continued to live as a member of the household, paying no board, until his removal to a hospital, where he died, except for a few days, when he rented a room near a factory where he had obtained employment, during which time he did not move his trunk from plaintiff's home and continued to take part of his meals there. After moving to plaintiff's home, insured communicated to an officer of defendant's local lodge his desire to have plaintiff named as beneficiary in his certificate, and the officer, after the situation had been explained to him, stated to insured,

in plaintiff's presence, that it would be necessary to designate plaintiff as a dependent, although plaintiff explained that she was not dependent upon insured. A new certificate was thereafter issued, in which plaintiff was named as beneficiary and designated as a "dependent," and thereafter plaintiff paid the assessments due on the certificate. *Held*, that it would seem that defendant was estopped to assert as a defense that plaintiff was not within the enumerated class of persons entitled to receive benefits.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock,* Judge.

AFFIRMED.

*W. Paul Mobley* for appellant.

(1)  No one can be made a beneficiary unless he comes within the classes named in the laws of the order, and the designation of the beneficiary as belonging to a certain class, if false, avoids the policy. Keener v. A. O. U. W., 38 Mo. App. 543; Wagner v. Benefit Society, 70 Mo. App. 161; Sup. Council v. Niedlet, 81 Mo. App. 598; Dennis v. Modern Brotherhood of America, 119 Mo. App. 210; Vaughn v. United American Mechanics, 136 Mo. App. 362; Missey v. Knights & Ladies of Honor, 147 Mo. App. 137; Umberger v. Modern Brotherhood of America, 162 Mo. App. 141; Gibbs v. Knights of Pythias, 173 Mo. App. 34; Whitmore v. Knights & Ladies of Honor, 100 Mo. 36; Masonic Ben. v. Bunch, 109 Mo. 560; 1 Bacon on Benefit Societies, p. 530; Gillian v. Dale, 69 Kan. 362; Caldwell v. Grand Lodge of United Workmen of California, 148 Cal. 195; Supreme Council v. Green, 71 Md. 263. (2)  An officer of a subordinate lodge, or one not a member of the governing body of a fraternal beneficiary society, has no authority to waive provisions of the constitution or laws of the society. Lavin v. Grand Lodge A. O. U. W., 104 Mo. App. 1; Cline v. Woodmen of the World, 111 Mo. App. 601; McMahon v. Maccabees, 151 Mo.

522; Smith v. Woodmen of the World, 179 Mo. 119; Shartle v. Modern Brotherhood of America, 139 Mo. App. 433; Sovereign Camp Woodmen of the World v. Hall, 104 Ark. 538; Kirk v. Sovereign Camp Woodmen of the World, 155 S. W. 39; Knode v. Modern Woodmen of America, 171 Mo. App. 377; Pirrung v. Supreme Council of the Catholic Mutual Benefit Association, 104 N. Y. App. Div. 571. (3) Even if the financier of a local lodge be regarded as the agent of the supreme lodge, he could not bind it in his transactions with a member beyond the scope of his authority. Harvey v. Grand Lodge, 50 Mo. App. 478; Borgraefe v. Knights of Honor, 22 Mo. App. 127, 141. (4) The beneficiary, not being related to the insured by blood or otherwise, was not a member of insured's family, neither were they members of the same family within the meaning of the constitution and laws of the order, and the statute relating to fraternal beneficiary associations and providing to whom benefits may be paid. R. S. 1909, sec. 7109; Lister v. Lister, 73 Mo. App. 99, 105; Masonic Ben. Assn. v. Bunch, 109 Mo. 560; Railway Conductors v. Koster, 55 Mo. App. 186; Tyler v. Mutual Relief, 145 Mass. 134; 1 Bacon, Benefit Societies, p. 603, sec. 256; Western Commercial Travelers' Association v. Tennent, 128 Mo. App. 541, 552; Catholic Benevolence Legion v. McGinness, 59 Ohio St. 531; Knights & Ladies of Honor v. Nairn, 60 Mich. 44; Mullins v. Looke, 27 S. W. (Texas) 928; Sheehy v. Scott, 128 Iowa, 551; Klee v. Klee, 93 N. Y. Supp. 588; Supreme Commandery United Order of the Golden Cross v. Donaghey, 75 N. H. 197; A. O. U. W. v. Gandy, 63 N. J. Eq. 692. (5) The constitution and laws of a fraternal beneficiary society are in the nature of a contract between the society and its members, and they are bound thereby. Gallop v. Royal Neighbors of America, 167 Mo. App. 85. (6) It was error on the part of the trial court to render judgment for plaintiff on the benefit certificate as issued, because it is

admitted by plaintiff in her petition and in the evidence, that the beneficiary did not belong to the class under which she was designated in the certificate, and for that reason a reformation of the benefit certificate was prayed for.

*Campbell Allison* for respondent.

(1)   The defense of *ultra vires,* or of noncompliance with or waiver of by-laws by a local officer, are affirmative defenses and should have been specially pleaded.   Under the unverified general denial, appellant cannot now avail itself of either.   Weber v. Ancient Order of Pyramids, 104 Mo. App. 729; Williams v. Verity, 73 S. W. 732; Louisville Tobacco Co. v. Stewart, 70 S. W. 285; Watts v. Ins. Co., 111 Iowa, 90; McElwain v. Ins. Co., 63 N. Y. 293; Johnson v. Woodmen of the World, 119 Mo. App. 98; McDonald v. Life Ins. Co., 154 Mo. 618; Gray v. Nat. Benef. Assn., 111 Ind. 531.   (2)   The grand lodge issued a policy to Mrs. Peterson, and for years accepted her payment of the premiums thereon by her checks.   The officer of the local lodge knew that Ward was a dependent upon her; knew that she was not a dependent upon Ward, and that Ward was a member of the family with her.   He falsely stated to her and to Ward that there were only two forms of policies—a beneficiary for the blood relatives and a dependent for no blood; that one is just as good as the other, and that she need not be afraid, and that a "dependent" was the proper designation.   It was either a mistake of fact, or done purposely to mislead, and, having issued a policy designating the plaintiff as a dependent instead of a member of her family, and having accepted all the premiums paid by Mrs. Peterson's checks, and death having occurred and no one else claiming the benefit, the company is now estopped to deny the liability.   Gibbs v. Knights of Pythias, 173 Mo. App. 46; Edmonds v. Amer. Patriots,

162 Mo. App. 231; Armstrong v. Modern Brotherhood, 132 Mo. App. 171; Armstrong v. Modern Brotherhood, 245 Mo. 161; Windergast v. Court of Honor, 170 S. W. 340; Norman v. U. C. T., 163 Mo. App. 175. (3) (a) There is no question here of waiver of by-laws by a local agent. The question here goes to the initial contract, the issuing of the policy. There was no fraud or misrepresentation on the part of the assured or the beneficiary. The agent knew Mrs. Peterson was not a dependent on Ward. He also knew that Ward was becoming a member of the family. He concealed the fact that she might have been put in the family class. He represented that she could be put in the dependent class, and they relied on his representations. The Grand Lodge ratified the acts of its agent, by issuing the policy. Notice to the agent is notice to the principal, and the contract having been fully performed it is now estopped. (b) A corporation cannot set up, as a defense to an action upon a contract made in violation of its charter, that the making of the contract involved an unauthorized exercise of corporate power, if the party who dealt with the company had no notice of the want of authority. Merowitz on Corp., Rule XI, p. 97. (c) If a contract entered into by a corporation has been performed by either of the parties, the other party cannot set up, as a defense to an action for the breach of such contract, that the corporation had no authority to enter into it. (d) As was said by Mr. Morowitz, on page 104: "The plea of *ultra vires* should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but, on the contrary, would accomplish a legal wrong." Cline v. Woodmen of the World, 111 Mo. App. 601. (4) The term "family," under Sec. 7109, should be construed to embrace such persons as habitually reside under one roof and form one domestic circle; or such as are dependent upon each other for support, or among whom there is a legal or equitable

obligation to provide support. The assured and the beneficiary were of the same family. Keener v. Grand Lodge, 38 Mo. App. 550; Hoffman v. Grand Lodge, 73 Mo. App. 87; Insurance Co. v. Tenant, 128 Mo. App. 541; Ferdach v. Grand Lodge, 81 Mo. App. 271; Birch v. Birch, 112 Mo. App. 163; Grand Lodge v. McKinstry, 67 Mo. App. 82; Revised Statutes, sec. 7109; Amended Session Laws of 1911, p. 286.

ALLEN, J.—This is a suit in equity upon a certificate of insurance issued by the defendant, a mutual benefit association, for the reformation of the certificate and praying for judgment thereon for the amount named therein, to-wit, $1000. In the certificate plaintiff was designated as a "dependent" of the insured. It is averred, in effect, that this designation was erroneously made, through mutual mistake of the parties; that plaintiff and the insured, however, were members of the same family and plaintiff therefore entitled to have the certificate reformed and made to designate her as one of the class of persons entitled to receive benefits under the constitution and by-laws of defendant order which confined the beneficiaries to "the families, heirs, blood relatives, affianced husband or wife, or the persons dependent upon the member." The decree below was in plaintiff's favor on the issues joined, and judgment was rendered for her for the amount named in the certificate, with interest, and the defendant appealed.

One Thomas Ward was a member of defendant order, and prior to December, 1908, held a benefit certificate issued by defendant, payable to his wife. In November, 1908, while he was living with his wife at or near the corner of Fifteenth street and Chouteau avenue in the city of St. Louis, the latter died, and during the following month Ward was taken into the home of plaintiff, Mrs. Peterson, who lived with her husband, at 1102 Rutger street, in said city. It appears that

plaintiff had known both Ward and his wife intimately for a great many years—from the time of plaintiff's childhood—had great affection for both of them, saw much of them, and assisted them from time to time in various ways. The evidence is that at the time of his wife's death, and for a short period thereafter, Ward, who was then about fifty years of age, lived in a single room which was scantily furnished, and that he was practically destitute. It appears that he had no known relatives, and no one to look to for assistance but plaintiff who had a sisterly regard and affection for him.

Plaintiff apparently lived in a comfortable house. Her husband was in business, and she conducted an artist's studio, of some sort, at the house in which they lived. She testified that Ward came into her home at her invitation. She said: "I had known him so long as a brother, and I says, 'Now, Tom, you are here all by yourself, . . . I want you to come over to my house to live;' and he thanked me, of course, and said he would be glad to; and he came over there."

Ward, having sold, for a small sum, such household goods as he possessed, moved his trunk and personal effects to plaintiff's home, and there continued to live as a member of the household for a period of nearly two years. The evidence is that during this time he worked only at certain intervals, for a few days at a time, paid no board, and none was expected of him. As to this plaintiff, in part, testified as follows, viz.: The Court: "What was the understanding between you and Mr. Ward in reference to defraying the household expenses there?" A. "There wasn't anything at all; we had no talk about that at all; I just simply took him in." Q. "He was your guest?" A. "No, he was just like a brother would be; like a member of the family." Q. "I mean, did he defray any household expenses?" A. "No, sir." Mr. Allison: "You didn't charge him any board, either?" A. "No, sir; I gave

him money and bought his underwear and things, when, I thought he needed them." Q. "There was no contract of any kind by which he was to pay you any board?" A. "None whatever." Q. "You took him in simply because he was an old lifetime friend?" A. "An old, lifetime friend." Q. "And his wife had also been?" A. "Yes." Q. "And it was simply a sisterly affection for him?" A. "Yes, that is it."

Plaintiff testified that some time after coming to her home, Ward, in going through his trunk, came across the certificate formerly issued by defendant order, payable to his wife, and expressed the desire that the beneficiary therein be changed to plaintiff; that thereupon plaintiff telephoned one Johnson, "financier" of the local lodge, who came to her house and to whom Ward, in her presence, explained the situation; that Johnson stated that it would be necessary to designate plaintiff as a "dependent," and though plaintiff explained that she was not dependent upon Ward, Johnson said that it would not matter and that it was proper to so designate plaintiff in the certificate. There is some little conflict in the testimony as to this matter, but not such as need be here dwelt upon. Shortly thereafter a new certificate was issued accordingly; and plaintiff paid all of the assessments payable thereon until Ward's death.

Ward both slept at plaintiff's home and ate his meals there until on or about October 7, 1910. It seems that he then procured employment (as he frequently had theretofore, but which he had never continued in but for a few days at a time) in a factory, and rented a room near the same, for convenience in getting to his work early. It is said that this was "just to last until he seen how he was going to like his position—if he was going to like it at all." He did not move his trunk or other personal effects from plaintiff's home, and continued to eat his evening meals there. This arrangement continued for but a brief time, for within

a few days Ward became sick and was taken to a hospital, where he remained until his death on March 19, 1911.

Though other questions are discussed in the briefs, it will only be necessary to determine whether plaintiff came within the class of persons entitled to receive benefits under the laws of the defendant order. If she fell within that class, it matters not that she was improperly designated in the certificate as a "dependent." We are of the opinion that facts of the case were such as to warrant the finding that she and the insured were members of the same family after the latter came into and became a part of the domestic circle of which she was a member, and that this family relation continued until the death of the insured.

The word "family" is one of more or less flexibility, susceptible of different meanings according to the connection in which it is used. It may be of narrow or broad meaning, as the intention of the parties using it, or of the law, may be made to appear. It is said that "in its ordinary and primary sense the term signifies the collective body of persons living in one house, or under one head or manager, or one domestic government;" and that unless the context manifests a different intention the word is usually construed in this primary sense. [See 19 Cyc., pp. 450-452.]

Our courts have defined the term to mean, in its ordinary use, "a collective body of persons who live in one home, under one head or management." [Birch v. Birch, 112 Mo. App. l. c. 163, 165, 86 S. W. 1106; Ridenour-Baker Grocery Co. v. Monroe, 142 Mo. 165, 43 S. W. 633; Jarboe v. Jarboe, 106 Mo. App. l. c. 459, 79 S. W. 1162; Hyde v. Honiter, 175 Mo. App. 583, 158 S. W. 83.]

The word has been the subject of much judicial discussion, particularly in cases involving homestead rights, the construction of wills, and cases such as the one before us. [See Bacon's Benefit So-

cieties and Life Insurance (3 Ed.), sec. 256.] It is unnecessary to refer to the many cases which illustrate the different interpretations put upon the word according to the circumstances under which it is used. We are here concerned only with its meaning as used in the constitution of the defendant order; and it cannot be doubted, we think, that the term is to be regarded as having been there employed in its ordinary and popular sense—the sense in which members of the order would naturally be supposed to understand it. The facts of the case call for the application of a liberal, rather than a narrow, rule of construction, since the law looks with disfavor upon the forfeiture of a contract of insurance which has been fully performed on one side by the payment of all premiums or assessments thereon to the death of the insured.

In Hofman v. Grand Lodge, 73 Mo. App. 47, in a case of this character, this court, in an opinion by BLAND, P. J., said: ''The respondent sustained that relation to the deceased which brings her clearly within the class of persons for whose benefit the order was instituted, 'members and their families.' . . . We are not of the opinion that the words, 'or their families' as used in section 47, supra, of the constitution of the order, should be construed to embrace all kindred of the same degree, but that the family therein intended to be benefited, where one exists, is the family as understood in its usual and ordinary sense, that is to *such persons as habitually reside under one roof and form one domestic circle, or* to such as are dependent upon each other for support, *or* among whom there is a legal or equitable obligation to furnish support.'' (Italics ours.)

In Grand Lodge v. McKinstry, 67 Mo. App. 82, it was held that a child taken by the assured into his household and reared and educated by him, though not legally adopted, was a member of his family within the meaning of the term as here used. It was said

that the assured was under a moral obligation to support such designated beneficiary; but the court quotes approvingly from Carmichael v. Northwestern Mutual Benefit Association, 51 Mich. 494, where it was held that a woman named in a benefit certificate who had lived in the family of the assured from early youth, and had been treated by him as a daughter, was a member of his family, the court saying that the word "family may mean the husband and wife, having no children and living alone together, or it may mean children, or wife and children, or blood relations, or *any group constituting a distinct domestic or social body.*" (Italics ours.)

We are of the opinion that the relations existing between Ward and plaintiff for approximately two years, were such as to constitute them members of the same family, within the meaning of the authorities, supra. They were members of one family circle; and their relations were "of a permanent domestic character, not that of those abiding temporarily together as strangers." [See Dunkin v. Frank, 8 Mo. App. l. c. 289.] There is nothing in the language used in the constitution of the order to imply that the term "families" is therein used in a narrow sense, and we are not inclined to so construe it where to do so would work an injustice. Nor can it be taken to mean that a beneficiary must necessarily be one dependent to some extent upon the member for support, as was held in Benevolent Legion v. McGinness, 59 Ohio St. 531. And the facts here are not such as were present in Supreme Lodge, etc. v. Nairn, 60 Mich. 44, or in Supreme Commandery v. Donaghey, 75 New Hampshire, 197, upon which appellant places reliance; for in the former it was sought to apply the fund to the payment of the assured's debts, owing to the designated beneficiary and others, and in the latter it was found that the assured lived in the family in question as a boarder.

Our statute relating to fraternal insurance, in force at the time in question (Sec. 7109, Rev. Stat. 1909), was amended in 1911 by striking out the word "families," and more specifically enumerating those entitled to receive benefits. Our Legislature evidently recognized the import of the prior rulings of our courts construing the word "family," and sought to confine within more narrow limits the class authorized to be named as beneficiaries in such certificates.

It is contended that the aforesaid language implies that the beneficiary must be a member of a family of which the assured is the head; but such has not been the construction placed upon a like use of the word "families" (see Ferbrache v. Grand Lodge, 81 Mo. App. 268), and we see no merit in this contention.

It is also argued that since the contract of insurance is testamentary in character and speaks from the death of the assured, plaintiff cannot here recover; for if any family relation was created it ceased to exist on October 7, 1910, when Ward began to sleep out of plaintiff's home. But from the facts touching this matter, referred to above, it may be found that the family relation did not cease prior to Ward's death. And the finding of the chancellor below should not be disturbed on this ground. [See Grand Lodge v. McKinstry, supra, l. c. 90.]

Under the facts of the case it would seem that the defendant is now estopped to assert, as a defense, that the beneficiary named in the certificate was not within the enumerated class of persons entitled to receive benefits (see Gibbs v. Knights of Pythias, 173 Mo. App. l. c. 47, 156 S. W. 11); however this might be as between interpleaders for the fund. But because of the theory upon which the case proceeds, and our views thereupon as above indicated, it is unnecessary to dwell upon this phase of the matter.

The judgment should be affirmed, and it is so ordered. *Reynolds, P. J.,* concurs. *Nortoni, J.,* not sitting.