STATE OF MISSOURI EX REL. JAMES F. KEMP, GUARDIAN OF THE PERSON AND ESTATE OF JAMES L. KEMP, N. C. M., RELATOR, v. HON. GLENDY ARNOLD, JUDGE OF THE PROBATE COURT WITHIN AND FOR THE CITY OF ST. LOUIS, MISSOURI, RESPONDENT.—113 S. W. (2d) 143.

St. Louis Court of Appeals. Opinion filed February 1, 1938.

*Reardon & Lyng* and *John H. Martin* for relator.

*Glendy B. Arnold, per se.*

BENNICK, C.—This is an original proceeding in *mandamus* involving the proposition of whether a probate court in this State has the jurisdiction to entertain a claim against the estate of an insane person for the support of a relative of such insane person where no such relationship exists between the two as to create a legal liability upon the insane person for the petitioner's support.

Respondent, who is the Judge of the Probate ·Court of the City of St. Louis, agrees to the legality and propriety of the proceeding in this court for the purpose of determining whether he possesses the jurisdiction which he has been asked to exercise, but he insists that he has no such jurisdiction, and concedes that he has heretofore denied relator's application upon the express ground of want of jurisdiction to entertain it.

Relator is the guardian of the person and estate of James L. Kemp, who has been heretofore adjudged and declared by the Probate Court of the City of St. Louis to be a person of unsound mind and incapable of managing his affairs. It appears, incidentally, that relator is a son, as well as the guardian, of the incompetent, and that his application to respondent was for an order authorizing him as guardian to appropriate the sum of $35 a month out of the assets of the guardianship estate for the support of one Margaret Kemp, the widowed mother of the incompetent.

In his application for such order relator recited the facts to be that Margaret Kemp was eighty-four years of age, and was then and for a long time had been without the means of support; that she had no children other than the incompetent who were capable of supporting her or contributing to her support; and that since 1914 the incompetent had maintained his home with his mother in the City of St. Louis, and, prior to the adjudication of his incompetency, had regularly contributed the approximate sum of $35 a month towards her support and maintenance.

Nothing else was recited in the application with respect to the family connections of the incompetent, save that he had two sons, relator and one other. What their ages were, whether they were married or single, or whether they resided at home with their father, was not set forth in the application, and the only allegation with respect to them was that they were not able to contribute towards heir grandmother's complete support and maintenance.

While this would appear to be the first case to reach an appellate court of this State directly involving the question of the right of the probate court to make an allowance for the support of a person to whom the incompetent owes no legal duty of support, there is authority to be found upon the question in other jurisdictions, which hold rather uniformly that the court which has control over the guardianship of the incompetent, whether it be a probate or a chancery court, may authorize such an allowance to be made where there is sufficient evidence adduced at the hearing on the application to satisfy the court that the incompetent, if he were sane, would himself make the contribution. [Citizens State Bank of Trenton v. Shanklin, 174 Mo. App. 639, 644, 161 S. W. 341; 32 C. J. 708.]

In certain States where the power to make such an allowance is recognized, it is said to be an incident to the equitable jurisdiction of the particular courts of those States which has been invested with the custody and control of the estates of incompetents, while in other States, whatever may be the source or extent of the general jurisdiction of the courts having control over the estates of incompetents, the power, where it exists, is derived solely from statute, and is to be exercised only as the statute may provide.

It is of course obvious that if such a power exists in this State, it must be afforded by statute, since the probate court as we know it is a court of limited jurisdiction, possessing only those powers which have been conferred upon it by statute, and being wholly without equitable jurisdiction, even though it is permitted, when necessity arises, to apply mere equitable principles in the exercise of its statutory jurisdiction. [State ex rel. v. Bird, 253 Mo. 569, 162 S. W. 119; Peck v. Fillingham's Estate, 199 Mo. App. 277, 202 S. W. 465; Curlee Clothing Co. v. Boxer (Mo. App.), 51 S. W. (2d) 894.]

Recognizing the necessity for showing statutory authority for the exercise of any particular jurisdiction on the part of the probate court, relator insists that respondent's jurisdiction to make the allowance in question is conferred by Section 475, Revised Statutes Missouri 1929 (Mo. Stat. Ann., sec. 475, p. 293), which provides that "every probate court, by whom any insane person is committed to guardianship, may make an order . . . . for the support and maintenance of his family, and education of his children, out of the proceeds of such estate."

It is conceded that the ultimate result in this case must depend upon the meaning to be ascribed to the word "family" as it is used in the above statute. Relator argues that the word is broad enough to include any person who lives under the same roof with the incompetent who is the head of the family, and to whom the incompetent owes either a legal or else a mere moral duty of support, while respondent takes the position that the statute does not have the effect of imposing any new legal obligations upon the citizens of this State; that it is only intended to lodge in probate courts the power to enforce existing legal duties; and that the word "family," as used in the statute, should therefore be properly construed to comprehend only those persons whom the incompetent would be legally liable to support and maintain if he were sane, which construction would of course confine the probate court's jurisdiction to the making of allowances for the support and maintenance of the incompetent's wife and minor children.

Now the word "family," as it is employed generally in legal terminology, is one of great flexibility, and capable of many different meanings according to the connection in which it is used. In a narrow and restricted sense it includes only husband and wife and their

children, but as commonly understood it is not so limited in its application, and unless the context in which it is used manifests a different intention it is usually to be construed in its broad and primary sense as a collective body of persons, living together in one home, in a permanent and domestic character, under one head or management. And when thus construed (as the authorities hold that the term is to be construed if no contrary intention is disclosed), whomsoever it is the natural or moral duty of the head of the family to support, or who is dependent upon him for support, is in legal contemplation entitled to be considered and regarded as a member of the family, if the other facts essential to the existence of the family relationship appear. [Wentz v. Chicago, B. & Q. R. Co., 259 Mo. 450, 471, 168 S. W. 1166; Whaley v. Whaley, 50 Mo. 577, 581; Ferbrache v. Grand Lodge A. O. U. W., 81 Mo. App. 268, 271; Lister v. Lister, 73 Mo. App. 99, 104; Elliott v. Thomas, 161 Mo. App. 441, 446, 143 S. W. 563; Peterson v. National Council of Knights and Ladies of Security, 189 Mo. App. 662, 671, 175 S. W. 284; 25 C. J. 664.]

In this instance there is nothing to indicate that the word "family" has been used in Section 475, *supra,* in other then the broad and primary sense in which it is commonly used even in statutes having to do with administration matters arising before the probate court, and if it had been intended that it should be given its narrow and restricted meaning in the particular statute and that the power of the probate court should be limited to orders for the support and maintenance of only such persons as the incompetent was legally liable to support, not only could the Legislature have very easily made its intention clear, but it would undoubtedly have taken the pains to do so. Indeed it is of interest to note that in the few reported cases coming to our attention in which the courts of other States have been called upon to construe local statutes similar to our own in both language and purpose, they have uniformly accorded their own statutes the same liberal construction that we think should be accorded ours. [Seley v. Howell, 115 Tex. 583, 285 S. W. 815; In re Freeman's Estate, 171 Miss. 147, 157 So. 253; In re Phillips' Estate, 130 Miss. 682, 94 So. 840.]

We cannot escape the conclusion, therefore, that under Section 475, *supra,* the probate court has been invested with the jurisdiction to entertain and act upon an application for an allowance to be made out of an incompetent's estate for the support and maintenance of one who is a member of his family in the broad and liberal sense of the term, even though the degree of relationship is not such as to entail upon the incompetent any legal liability for the petitioner's support. This does not mean that the court is to be motivated by what might perchance be its own personal ideas or generous impulses regarding what would constitute a proper disposition of the incompetent's estate or income, but if it is shown to the satisfaction of the

court that the petitioner is properly to be regarded as a member of the incompetent's family within the sense in which the term has been used in the statute, that he is in actual need of support and has the moral right to look to the incompetent for assistance, and that the incompetent's estate is of sufficient proportions to warrant an allowance to be made, then the court, if convinced from all the facts and circumstances in evidence that the incompetent, if sane, would wish either to assume such a moral obligation towards the petitioner or else to continue the same if assumed prior to the adjudication of his incompetency, may authorize such an allowance to be made as is commensurate with the exercise of a sound judicial discretion in the case.

We are of course concerned in this particular proceeding, not with the question of whether Margaret Kemp should ultimately have an allowance for her support and maintenance out of her incompetent son's estate, but only with the question of whether respondent has the jurisdiction to entertain relator's application filed on her behalf. As to this, it is enough to say that the facts recited on the face of the application are sufficient to bring the same within the purview of Section 475, *supra,* and respondent therefore has the jurisdiction to hear the application, with his final action upon it to be determined by what the evidence taken at the hearing may disclose.

It follows that the alternative writ of *mandamus* heretofore ordered to issue should be made peremptory, and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The alternative writ of *mandamus* heretofore ordered to issue is, accordingly, made peremptory. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.

## ON MOTION FOR REHEARING.

BENNICK, C.—A motion for rehearing has been filed by respondent in which he questions the correctness of our construction of Section 475, Revised Statutes Missouri 1929 (Mo. Stat. Ann., sec. 475, p. 293), in so far as we have held such statute to be broad enough in its terms to authorize the probate court, upon a proper showing, to make an allowance out of an incompetent's estate for the support of a member of the incompetent's family as to whom there is no legal liability for support.

Again respondent argues that the only purpose of the statute is to invest the probate court with judicial power to protect the insane, conserve and manage their estates, and enforce certain legal duties imposed upon them, and that in view of such a purpose the word "family," as used in the statute, should consequently be limited in its application to the legal dependents of any insane ward.

Though recognizing the force of respondent's contention, we nevertheless cannot escape the conclusion that the statute was designed by the Legislature to confer upon the probate court a power and authority over and above that of merely enforcing bare legal obligations of an incompetent for which, as a matter of fact, his estate would be liable without the enactment of any such statute.

It occurs to us that the power conferred upon the probate court to make allowances out of an incompetent's estate for the support and maintenance of his family and the education of his children is to be viewed and interpreted in the light of the theory upon which his estate is managed and administered during the period of his incompetency, which is not with a view to winding up the estate as in the case of an administration upon the estate of a decedent, but instead is for the purpose, in so far as may be possible, of protecting and preserving the estate in the manner the incompetent himself would have done if he had retained his faculties, so that if he fortuitously recovers his right mind, the estate remaining in his guardian's hands may be restored to him for his subsequent use and enjoyment of it. [The State to use v. Jones, 89 Mo. 470, 1 S. W. 355.]

So by analogy it would appear that the intent of the Legislature in enacting Section 475, *supra,* was to provide a power and authority in the probate court whereby, the circumstances of the case permitting, the family of an incompetent might be maintained and his children educated during the period of his incompetency in as nearly the same manner as the court might conclude that the incompetent himself would have maintained his family and educated his children if he had not become of unsound mind and incapable of managing his own affairs. And if this conclusion implies that the word "family," as used in the statute, is to be taken as broad enough to comprehend others than those to whom the incompetent may owe the bare legal duty of support, is it not after all strongly persuasive of the correctness of this conclusion that in providing for allowances to be made for the education of the incompetent's "children" the Legislature did not see fit to limit such allowances to the education of "minor" children as to whom alone a legal liability for necessary expenditures exists?

Respondent argues that in reaching this conclusion we must necessarily construe the statute as imposing a duty upon insane wards to support members of their families who have no legal claim thereto, and, in fact, as giving to such persons a legal right to such support. However this is not the case. As we interpret the statute, it does not impose any additional legal duty upon an incompetent, but was only intended to confer the authority upon the probate court, where the proof may warrant and the circumstances permit, to make an allowance for the support and maintenance of one occupying the *status* of a member of the incompetent's family, if it appears to the satis-

faction of the court, from all the evidence adduced, that the particular contribution is one which the incompetent himself, if he were sane, would naturally wish to make.

Conceding that the power to make allowances out of an incompetent's estate for the support of persons other than the incompetent's legal dependants is one which first came into being as a part of the jurisdiction of chancery courts, that circumstance is still no reason why the corresponding power may not be exercised by the probate courts of this State to whatever extent the same has been conferred upon them by statute. It is of course true that probate courts in this State possess no inherent equitable jurisdiction, but as we have already pointed out, it has always been recognized that they may apply equitable principles in the exercise of the statutory jurisdiction with which they have been invested.

It follows that respondent's motion for a rehearing should be overruled, and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. Respondent's motion for a rehearing is, accordingly, overruled. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.