Merrimack, }
Dec., 1898. }

STONE, *Ex'r*, v. GRANITE STATE FIRE INSURANCE CO.

Under a provision that a fire insurance policy shall be void if the premises " shall become vacant by the removal of the owner or occupant," and so remain for more than thirty days without the assent of the company, the policy is not invalidated, as matter of law, by a temporary absence of the occupant for more than thirty days, without such assent.

Whether a temporary absence of the occupant of a dwelling-house constitutes a vacancy by removal, within the meaning of that phrase as used in a fire insurance policy, is a question of fact for the jury, in the determination of which the words are to be taken in their ordinary sense, as commonly used and understood.

A fire insurance policy issued to the estate of a person deceased subsists for the benefit of all parties having a pecuniary interest therein.

ASSUMPSIT, upon a fire insurance policy dated June 10, 1895, issued to " Uriel Rollins' Estate." The descriptive part of the policy is as follows : " $1,000 on their 1½-story frame dwelling-house and ell; $300 on their frame barn connected; $200 on household furniture, beds and bedding, pictures and frames, crockery and glassware, silver and plated ware, provisions, wearing apparel of family, and fuel therein. Occupied by the widow of Uriel Rollins, deceased, situate in East Andover, N. H." August 10, 1897, during the term of the policy, the insured buildings, situate on a small farm about half a mile from the village of East Andover, were totally destroyed by fire. Proof of loss was duly furnished, and suit brought January 27, 1898. The schedule of loss contained no items of wearing apparel. The names of Julia A. Rollins, Hannah Wells, Mary A. Cutts, Bertha Prescott, and Maria Hammond are indorsed upon the writ as plaintiffs in interest.

The defendants pleaded the general issue with a brief statement (1) that the policy sued upon was at the time of the loss by its express terms and conditions void and inoperative, because said insured premises became vacant by the removal of the said owner or occupant on May 20, 1897, and continued to remain vacant until after August 10, 1897, without the printed or written consent of said company indorsed on said policy; (2) that the estate of Uriel Rollins had no insurable interest in the property insured, and sustained no loss or damage by reason of said loss by fire.

The policy contained the following condition : " This policy shall be void and inoperative during the existence or continuance

of the acts or condition of things stipulated against as follows :
If without such assent [the assent in writing or in print of the
company] the situation or circumstances affecting the risk shall,
by or with the knowledge, advice, agency, or consent of the in-
sured, be altered so as to cause an increase of such risk; . . . or
if the premises hereby insured shall become vacant by the re-
moval of the owner or occupant, and so remain vacant for more
than thirty days without such assent."

May 21, 1897, Julia A. Rollins, widow of Uriel and occupant of
the premises at the date of the policy, on account of the state of
her health left the premises, intending to remain absent until the
latter part of August, and taking with her only clothing neces-
sary for such an absence.  The furniture, provisions, and other
household effects were left ready for use upon her return.  John
D. Aiken leased the land connected with the premises, and had
the use of the barn and charge of the premises during her
absence.  He stored some hay and farming tools in the barn, had
the keys of the house, and went into it in the daytime at least
twice a week.  On these occasions he went into each room, tried
the windows, and saw that they and all outside doors were se-
curely fastened.  The premises were not in any other way occu-
pied as a residence by any person from May 21 until the fire.

Subject to the plaintiff's exception, Stone testified upon cross-
examination that he was aware that the following was one of the
rules of the New Hampshire Board of Underwriters, under which
he understood all policies in this state were issued : " Farm
buildings, outbuildings, and contents.  First month free of
charge.  For each month thereafter short rates of one per cent.
per annum shall be paid.  Dwellings temporarily vacated by
families, leaving furniture therein, shall not be considered occu-
pied unless some person is left in charge of the premises and
residing therein."  There was no evidence that the plaintiffs in
interest had any knowledge of this rule.  Mrs. Rollins under-
stood that if she abandoned the premises as a residence and went
to live elsewhere, it would be necessary to have the house insured
as unoccupied.  Neither Stone nor the defendants had any
knowledge or notice of her absence.

The will of Uriel Rollins gave to his wife a life estate in the
buildings insured and the use of all the testator's household fur-
niture and effects, with the right to sell any of the furniture not
wanted by her, and gave to the other plaintiffs in interest, who
are also residuary legatees, " whatever of my property may be
left at the decease of my wife, the use and possession of which
I have given her by this will."  Stone was appointed executor,
October 10, 1893, and took out the policy at its date.  He was
not an agent of the defendants authorized to write policies, but
sent in applications to them, upon which policies were written

in the home office. He did so in this case, and paid the premium from funds of the estate. He settled his account as executor, February 25, 1896, having paid all debts of the estate, and turned over all property of the estate to the legatees.

The property destroyed under the third item in the policy was valued at $222.23, of which $71.20 in value had been the property of Uriel Rollins in his lifetime, and the balance was property of Mrs. Rollins.

The plaintiff having introduced evidence tending to prove the foregoing facts, the defendants moved that a verdict be directed for them. By agreement the case was taken from the jury. If the defendants' motion should be granted, judgment is to be rendered for them; otherwise, a verdict is to be entered and judgment rendered for the plaintiff for the amount which he is entitled to recover on the facts.

*George R. Stone* and *Sargent & Niles*, for the plaintiff. ·

*Calvin Page* and *Leach & Stevens*, for the defendants.

BLODGETT, C. J.   In construing insurance policies courts are governed by the same general rules which are applicable to other written contracts. That is to say, it is the duty of the court to adopt that construction of the policy which, in its judgment, shall best correspond with the intention of the parties, which is to be ascertained from the whole instrument, the nature of the property to which the language of the policy is to be applied, the purposes for which property is ordinarily to be used, its situation, and the manner in which it is usually kept. These general rules are elementary, and are recognized and approved in numerous text-books and decisions.

In the present case the property insured mainly consisted of a dwelling-house and a barn connected · therewith, which were totally destroyed by fire during the term of the policy; and the principal question is whether the temporary absence of the occupant, on account of ill health, for more than thirty days and without the defendants' assent, avoided the policy, under a condition therein that it should be void and inoperative " if the premises hereby insured shall become vacant by the removal of the owner or occupant and so remain vacant for more than thirty days " without the assent of the insurers.

This condition is to have a reasonable interpretation, according to the ordinary acceptation of the language used. In other words, it is to be construed as it would usually be understood by persons in general reading and acting upon it. *Stupetski* v. *Insurance Co.*, 43 Mich. 373, — 38 Am. Rep. 195, 196. When this is done, it is plain that a temporary absence of the character

appearing in this case cannot be held to be within the condition, as a matter of law. " The question what constitutes vacancy or non-occupation is one of law and fact, to be determined by the trier of the facts," and " must be decided in view of all the circumstances of the case " (*Carr* v. *Insurance Co.*, 60 N. H. 513, 520); and therefore, while we think that to an ordinary mind the terms " absence " and " removal," when applied to the occupant of a dwelling-house, do not convey the same but a widely different meaning, and that according to the common understanding persons leaving their houses on visits, excursions, or other temporary occasions, do not remove from or cease to occupy them, it is sufficient for the present purpose to say that, as matter of law, in order to avoid the defendants' policy by reason of the condition therein against vacancy, the insured premises must not only have been vacant for more than thirty days without their assent, but the vacancy must have been occasioned " by the removal of the . . . occupant " therefrom (*Cummins* v. *Insurance Co.*, 67 N. Y. 260,— 23 Am. Rep. 111; *Herrman* v. *Insurance Co.*, 81 N. Y. 184,— 37 Am. Rep. 488; *Stupetski* v. *Insurance Co.*, *supra*), and that the questions of vacancy and removal were for the determination of the jury under proper instructions.

And at this point and in this connection it may properly be observed that there is no real conflict of doctrine between the case in hand and *Sleeper* v. *Insurance Co.*, 56 N. H. 401, or *Moore* v. *Insurance Co.*, 64 N. H. 140. In the former, the facts were essentially different; while in the latter, the controlling phrase, " vacant by removal," was not in the condition, and the facts were almost exactly the reverse of those before us.

The fact that, unknown to the plaintiffs in interest, one of the rules of the New Hampshire Board of Underwriters (which it is said makes rules and rates for the guidance of local insurance agents) provides " that dwellings temporarily vacated by families leaving furniture therein shall not be considered as occupied unless some person is left in charge of the premises and residing therein," is quite immaterial. The decision of the case does not hinge upon this rule. The question arising upon the facts is, what does the phrase " vacant by the removal of the owner or occupant " mean as used in the policy? The test is not what the defendants may have understood the meaning of those words to be when used in the business of fire insurance; but, as before stated in substance, they must be taken in their ordinary sense as commonly used and understood, and as the insured understood and could properly understand them, from the meaning which they convey to the common mind. *Herrman* v. *Insurance Co.*, *supra*. " In the absence of competent evidence to the contrary, . . . the language of the contract must be understood to convey the ordinary and usual meaning of the English language as used

in the community where the parties live." *Kendall* v. *Green*, 67 N. H. 557, 562.

The contention that the policy had become inoperative at the time of the loss, because prior thereto the executor had settled his administration account and delivered possession of the insured property to the legatees as the absolute owners thereof, is not tenable.

The policy is to be construed as an open one, for account of whom it may concern. Its issuance to " Uriel Rollins' estate " was, in effect, an insurance of the property of the estate covered by it to the parties having a pecuniary interest therein; and as the estate proved to be solvent, so that none of the insured property was required for the payment of debts, the legatees under Rollins' will, who are the plaintiffs in interest in this suit, are to be regarded as the parties for whose benefit the insurance was effected, and accordingly, as owners of the property at the time the loss occurred, they are entitled to recover such insurance. The fact that they were not the unconditional owners at the date of the issuance of the policy did not preclude them from having an insurable interest in the property at that time as legatees. An interest, to be insurable, does not necessarily depend upon the ownership of property. " It is now well established that even one who has no title, legal or equitable, in the property, and no present possession or right of possession thereof, yet has an insurable interest therein, if he will derive benefit from its continuing to exist, or will suffer loss by its destruction." *Williams* v. *Insurance Co.*, 107 Mass. 377, 379, and authorities cited; *Hanover Insurance Co.* v. *Bohn*, 48 Neb. 743, 750, — 58 Am. St. Rep. 719, 724; *Merrett* v. *Insurance Co.*, 42 Ia. 11; Wood Fire Ins., *ss.* 38, 40; May Ins. (2d ed.), *ss.* 80, 91, 115.

The defendants' motion is denied. As a matter of law, the policy did not become inoperative through the temporary absence of Mrs. Rollins; and whether the defendants' risk was increased thereby, it was the province of the jury to determine.

*Judgment for the plaintiff for $1,371.20, and interest.*

PARSONS, J., did not sit: the others concurred.