Cheshire, }
Feb. 5, 1924. }

### WILLIAM PEARSON & a. v. HELEN HARDIE BALDWIN.

An agreement by a widow for the sale and conveyance of her own interest, and that of her minor children, in her deceased husband's estate was construed to be an indivisible contract *i. e.* that neither party intended the purchase and sale of less · than the entire estate; and both parties having understood that without judicial authorization the share of the minors could not be sold, the refusal of the probate court to authorize the sale of the minors' shares at the agreed price discharged her from personal liability as to the entire agreement.

ASSUMPSIT, for breach of contract.

The controversy relates to a contract for the sale of the Baldwin farm in East Jaffrey. The defendant, Helen H. Baldwin, is the widow of Albert Baldwin, Jr., the owner of the farm, who resided in Louisiana and died there intestate prior to 1915. He left surviving him the widow, an adult daughter, the other defendant in this suit, and two minor children. Mrs. Baldwin was administratrix of Mr. Baldwin's estate and guardian in Louisiana of the minor children, who owned four-ninths of the property. She also held a power of attorney to act for her daughter, Mrs. Martin. The plaintiffs made an offer of thirty thousand dollars for the Baldwin farm. On the twenty-sixth day of October, 1915, Mrs. Baldwin and the plaintiff, William Pearson, met in New York together with their attorneys, and made and signed a contract whereby Mrs. Baldwin agreed to sell and convey to the plaintiffs the Baldwin farm

for thirty thousand dollars.  The plaintiffs paid to Mrs. Baldwin at that time five thousand dollars, which was to be forfeited as liquidated damages in case the plaintiffs should fail to pay the balance of the purchase price and take title to the property.  It was stipulated that the title should be passed on the first day of January, 1916.  The contract was signed by Helen Hardie Baldwin individually and as administratrix and as attorney in fact, and by Pearson Bros. William Pearson.

Thereafter Mrs. Baldwin filed copies of her appointment in Louisiana as guardian of her minor children, in the probate court of Cheshire county, together with a petition for license to sell her wards' interests in the farm.  The return day of the petition was December 27, 1915.  After the execution of the contract and before the return day of the petition for license to sell, Bean & Symonds made an offer of thirty-six thousand dollars for the property.  The plaintiffs were notified of the offer, and that the property could not be sold to them for thirty thousand dollars.  After that, the five thousand dollars was returned to the plaintiffs and accepted by them without prejudice.

On the return day of the petition for license to sell, it was continued to January 24, 1916.  December 27, 1915, the plaintiffs offered to pay the guardian for the minors' shares on the basis of thirty-six thousand dollars for the whole property, and on December 29, 1915, they brought this action.  On January 24, 1916, a decree was made by the probate court licensing the guardian to sell the minors' interests for the best obtainable offer.  Subsequently, Bean & Symonds having increased their offer to thirty-nine thousand one hundred dollars, the farm was sold and deeded to them for that amount February 1, 1916.  Other facts are stated in the opinion.

The case was tried and transferred by *Marble,* J., who found that the defendants Helen Hardie Baldwin and Mrs. Fontaine Martin are liable for failing to convey to the plaintiffs their respective interests in the real estate described in the contract, and further that Helen Hardie Baldwin is liable personally for failing to convey to the plaintiffs the interests of her wards in said real estate. The defendants excepted to the foregoing findings.

*Tuttle, Wyman & Starr* (*Messrs. Tuttle* and *Willard Wight* orally), for the plaintiffs.

*Orville E. Cain, Jonathan Piper* and *Demond, Woodworth, Sulloway & Rogers* (*Mr. Jonathan Piper* orally), for the defendants.

PLUMMER, J.  Exceptions were taken by the defendants to the refusal of the court to grant their requests for findings.  These are not considered in detail, because the exceptions of the defendants raise one question:  Are the defendants liable upon the evidence for failure to convey the Baldwin farm to the plaintiffs?  The decision of the trial court that the defendants are liable for their failure to convey to the plaintiffs their respective interests in the property and that Mrs. Baldwin is liable personally for failing to convey to them the interests of her wards therein, must be based upon a finding that Mrs. Baldwin, upon the twenty-sixth day of October, 1915, made an absolute and unqualified contract to convey to the plaintiffs the Baldwin farm for thirty thousand dollars on the first day of January, 1916.

Most of the facts in this case are not in dispute.  The parties had in mind and it was their intention in making the contract that title to the whole of the farm should be conveyed.  The plaintiffs were engaged in the lumber business.  There was a large amount of lumber upon the farm, and they were interested in it as a lumbering proposition.  The court found that "the contract was an 'entire' one in the sense that neither party had in mind the purchase and sale of merely a fractional interest in this real estate."  The evidence fully warrants this finding, and it clearly appears from the evidence of both parties that the contract for the sale and purchase was an entire, indivisible contract.  It must, therefore, stand or fall in its entirety.  When the parties with their attorneys met in New York to make and execute the contract, they all knew that a portion of this farm was owned by the minor children of Mrs. Baldwin, and that before she as their guardian could convey their interests, the sale would have to be sanctioned by some court in New Hampshire.  Neither the parties nor their attorneys, who were New York lawyers, knew just what proceedings would have to be instituted, but they all knew and understood that some steps would have to be taken to gain the approval and permission of the New Hampshire court having jurisdiction of the matter, in order to sell and convey the minors' interests in the property, and give a good title thereto.  To meet this situation the attorney for the defendants with the approval of the plaintiffs' attorney drafted and incorporated in the contract the following paragraphs: "That in the event that the said party of the first part is unable because of the refusal of the courts of New Hampshire for any reason to give a good marketable title free from all liens and encumbrances, or for any other reasons, then in

that event said party of the first part hereby agrees to repay to the said party of the second part the sum of $5000." "The party of the first part further agrees to use due diligence in taking such steps or proceedings as may be necessary to qualify her to give a good and sufficient title to the property herein mentioned and to carry out this contract." These paragraphs unquestionably refer to the interests of the minor children in the Baldwin farm. Giving the language of the first paragraph its ordinary and usual import and meaning (*Kendall* v. *Green*, 67 N. H. 557, 562; *Lancaster & Jefferson &c. Co.* v. *Jones*, 75 N. H. 172, 175; *Stone* v. *Insurance Co.*, 69 N. H. 438), it distinctly indicates that it was the intention and agreement of the parties that if Mrs. Baldwin failed to gain the approval and the permission of the court to carry out the contract and to convey the minors' interests in the property, or for any other reasons she could not give a good title to it, then she was to return to the plaintiffs the five thousand dollars they had paid to her, and thereupon the contract was to be null and void. In the light of the circumstances under which this contract was made, there is no other construction that can reasonably be placed upon the language used. The provision that the five thousand dollars was to be repaid if Mrs. Baldwin could not give a good title to the property must mean that if that event occurred, the contract would be at an end. The contract as drawn does not reveal any purpose on the part of the parties to make an unqualified, unconditional agreement for the conveyance of the property. Neither can any such intent be gathered from the competent oral evidence presented at the trial.

On the twenty-fourth day of January, 1916, the guardian of the minors presented to the probate court of Cheshire county all the facts relating to the sale of the property, and the court made a decree in which he ordered that the interests of the minors therein should be sold for the best obtainable offer. The guardian then made oath, as required by law, that she would make the sale in accordance with the decree of the court. And on the first day of February, 1916, having received from Bean & Symonds an offer for the property of thirty-nine thousand one hundred dollars, she sold and deeded it to them for that amount, as that was the best obtainable offer. Thereafter she made a return under oath to the probate court that she had sold the interests of her wards for the best obtainable offer. The action taken by the guardian in selling her wards' interests in the property was exactly what she was legally bound to do. She could do nothing else. She had no legal or moral right

to sell their interests to the plaintiffs on a basis of thirty or thirty-six thousand dollars for the whole property, which were the offers of the plaintiffs, when she had an offer from Bean & Symonds of thirty-nine thousand one hundred dollars. The situation contemplated by the parties when they made the contract had arisen, namely, that Mrs. Baldwin was unable to give a good title to the property, by reason of her inability to obtain the permission of the probate court to make the sale of her wards' interests therein on the basis of thirty thousand dollars for the whole property. The contract was entire and indivisible for the conveyance of the whole of the Baldwin farm, and as Mrs. Baldwin was unable as guardian of her minor children to convey to the plaintiffs their interests therein, and has repaid to the plaintiffs the five thousand dollars which they had paid, the contract by a reasonable construction of its terms became null and void. The plaintiffs have cited *Holyoke* v. *Clark*, 54 N. H. 578; *Underhill* v. *Gibson*, 2 N. H. 352; *Woodes* v. *Dennett*, 9 N. H. 55, to sustain their contention that Mrs. Baldwin was personally liable upon the contract for failure to convey her wards' interests in the Baldwin farm. These cases, as well as other cases and authorities cited, have no application to the present case. In substance they hold that an agent or guardian, although he has no authority to bind his principal or ward, may obligate himself personally if he uses apt words to do so. Undoubtedly this is true. If Mrs. Baldwin had made an absolute and unqualified written contract to convey the Baldwin farm to the plaintiffs for thirty thousand dollars, she would have been subjected to liability if she failed to do so. But the plaintiffs seem to overlook the fact that this was a conditional contract. The conclusion herein reached renders it unnecessary to consider the exception of the defendants to the refusal of the court to allow their plea in abatement of the cause of action because the suit was prematurely brought.

*Exception sustained: verdict and judgment for the defendants.*

All concurred.