Belknap, }
Jan. 6, 1931. }

GEORGE CARTIER *v.* LUMBERMEN'S MUTUAL CASUALTY CO. & *a.*

*Frank P. Tilton* and *Fortunat E. Normandin* (*Mr. Tilton* orally), for the plaintiff.

*Murchie, Murchie & Blandin* (*Mr. Alexander Murchie* orally), for the insurer.

ALLEN, J.   It is said for the plaintiff that the excepting clause of
the policy deals with a household of which the insured is the head and
more than a member.   To support the claim it is argued that since
the clause expressly includes servants of a household within its mem-
bership and since such servants are only servants of its head and not
of its other members, it follows that the insured must be its head
within a proper meaning of the clause.   And even if the meaning is
doubtful, it is urged that the same result should be reached as the
one more probably understood by the insured.

Argument is also advanced that the insured would not have ac-
cepted the policy if the excepting clause applied to him, since it would
cost no more to obtain a policy without the clause.   The record shows
no facts to sustain this point of argument or that the insured's ac-
ceptance of the policy was in any way influenced by its cost.   There
is nothing to indicate that the amount of the premium affected his
understanding of the clause.   This point must therefore be disre-
garded.

A household is a group of persons living together.   It is usually
said that they must be under a head called the householder.   Of the
household here apparently the mother was the head.   The insured
and his brother being members of it, it was their household or the
household of each of them.   There were no servants in it, but if there
had been, it would still have been theirs.   The clause does not refer
to servants of the insured but to a household embracing the servants
in its membership.   It was the assured's household, even if the serv-
ants, had there been any, would not have been his.   The clause
would not seem to be doubtful in a disclosed purpose to make mem-
bership in a household on the part of the insured enough to subject
him to it.   It is the natural and ordinary meaning of the words used.
As one reads the clause, the policy gives the insured no protection
for injury to members of his household, and the household includes
any servants in it.

But if it be called doubtful whether the clause is operative unless
the insured is the household head, the construction of an insurance
policy is governed by the same general principles used in the case of
other written instruments.   *Stone* v. *Insurance Co.*, 69 N. H. 438,
440; *Marsh* v. *Insurance Co.*, 71 N. H. 253, 254.   It is said in *Watson*
v. *Insurance Co.*, 83 N. H. 200, 202: "The test is not what the insurer
intended its words to mean, but what a reasonable person in the posi-
tion of the insured would have understood them to mean."   This is
only an application of the general rule based on justice and common

sense that the meaning of one's writings, as well as of his speech, when doubtful, is to be determined in the light of the situation in which they are presented or uttered. Of such situation the position of the party addressed is a feature. What the latter would naturally understand to be the meaning is to be given effect because the standard is external. *Fitch Company* v. *Insurance Co.*, 82 N. H. 318, 319. If one says to another one thing and means to himself something else, he is held to what he says, and that is what he is naturally understood to say.

In like manner, as implied by the foregoing citation from the *Watson* case, the standard is also external as to the party addressed. It is not what he understands but what he reasonably should understand that is effective, and the offeror is bound by the offeree's understanding only when it is a natural and proper one to be adopted. The latter may not resolve doubtful language in his favor if he is not misled and if it is not reasonable to do so.

The law's adoption of these external standards of speech and writings merely expresses the common understanding on the subject. The rule of law conforms with the rule of life.

In determining the reasonable meaning of what is said, its source is a proper subject of consideration. The circumstance of interest rather than disinterest on the offeror's part in what he says may be enough not to entitle the offeree to assume and adopt a meaning in his own favor. The reason for making an offer may well be a proper solution of its construction. Contracts and business transactions generally are entered into because each party regards them as being for his advantage, and offers of a business character are presumably made in the offeror's thought that their acceptance will benefit him. The offeree, entitled reasonably to read the language in his own interest, is at the same time bound to count on a meaning which favors the offeror so far as in reason he should.

In considering the purpose of the excepting clause of the policy it is clear enough that it was meant to avoid the insurer's liability to indemnify for injuries to members of the insured's household, whether or not he was its head. The natural tendency of one insured to strengthen or enlarge the evidence of liability to members of his household for accidents insured against increases the hazard of liability under the policy in such cases over that for accidents to others. Without actual dishonesty the disposition to favor those close to one reflects itself in opinions and judgments, and one insured is more likely to concede by admission or non-resistance blame for hurting a mem-

ber of his household than for doing harm to others. A household and a family are substantially synonymous terms, and family ties bind most closely. And it can be of no importance in this bearing what position the insured has in his household. The insured here would be as much disposed to favor his mother, the household head, if he injured her, as she would to favor him if she were the insured. It is an attitude of common mutuality arising out of the general status and not one dependent upon the particular relationship of one member to another within the status. In sense and reason the insurer had no occasion in issuing a policy to one belonging to a household to make a distinction according as he was or was not its head. Such a difference would be wholly of caprice. Recognizing the increased hazard in cases of family accidents, the insurer purposed to avoid it generally, and the excepting clause makes the purpose apparent.

There is nothing in the wording or phrasing of the clause which should reasonably give the insured occasion to think it had a narrower application. The phrasing is well adapted to express the broad purpose of the clause. It is not a case where it may fairly be said that different language would have been used if such a purpose were intended. With full allowance for the demands of preciseness in written contracts there is no sufficient call for the clause to specify more explicitly than it does the insured's relation as a member, regardless of his being the head, of a household, to make it operative. On the contrary, if it had been the purpose that the clause was to be operative only when the insured was the head of a household, more restrictive and specific language to such effect would probably have been used. Herein the case differs from that of *Watson* v. *Insurance Co.*, 83 N. H. 200.

If the insured read the clause, he knew that it limited liability. As an exception for the insurer's benefit he would know it was not favorable to him and he would naturally expect the insurer to mean to have the exception as broadly inclusive as a fair and reasonable meaning of it permitted. He might not adopt a meaning less in the insurer's favor and more in his own unless it was reasonable to think such a meaning was intended. If he gave any thought about it, he sensed the reason for inserting the clause, and the reasonable conclusion would be that it was meant to cover family accidents generally and not an arbitrary part of them limited to such as were caused by household heads. He was not justified in thinking that it did not apply to him because he had membership only in the household. At least it is more probable that he would not reasonably have thought

so. The contract here is a written one and the process of ascertaining its more probable meaning by external standards of reasonableness is therefore to be employed in construing it. There being nothing to show that the insurer ought to have understood otherwise, the insured is to be assumed to have the learning and experience of the ordinary man.

*Bill dismissed.*

All concurred.