LUMBERMENS MUT. CASUALTY CO. v.
PULSIFER et al.

No. 85 Civil.

District Court, D. Maine, S. D.

Oct. 17, 1941.

Forrest E. Richardson, of Portland, Me., for plaintiff.

Clifford & Clifford, of Lewiston, Me., for defendants Louis N. Pulsifer and Elton P. Pulsifer.

Peter Isaacson, of Lewiston, Me., for defendant Louis Hunt.

PETERS, District Judge.

This is a petition for a declaratory judgment in which the plaintiff, a casualty insurance company, alleges that its insured, Louis N. Pulsifer, is being sued by the defendant Hunt for damages on account of personal injuries caused by Louis when driving a car owned by the defendant Elton P. Pulsifer, a son of Louis, it being claimed by all defendants that Louis's liability to Hunt is covered by his policy with the plaintiff—the plaintiff asserting in this proceeding that by the terms of the policy the defendant, Louis Pulsifer, was not insured while driving the particular car in question under the circumstances disclosed. A judgment to that effect is asked for.

The case was tried without a jury. I find the facts to be as follows:

The defendant Louis Pulsifer, as owner of a certain Ford automobile, obtained an insurance policy from the plaintiff which provided protection from liability for accidents while driving his own car and also, by a separate rider or endorsement, obtained protection from liability while driving any other private passenger automobile, with certain exceptions, the rider con-

taining the words in question reading as follows:

"Drive Other Private Passenger Automobiles Endorsement

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Property Damage Liability also applies subject to the following provisions:

"1. The insurance applies

"(a) to the named insured, if an individual and the owner of the automobile classified as 'pleasure and business' or if husband and wife either or both of whom own such automobile, and

"(b) to the spouse of such individual if a resident of the same household and to the employer of such named insured, as insured, and

"(c) to the individual named below, as insured, if a relative of and a resident in the household of the named insured, with respect to the operation of any other private passenger automobile by such named insured or spouse or by such named individual or by a private chauffeur or domestic servant in the employ of either of them, and with respect to the presence of such named insured or spouse or such named individual in any other private passenger automobile.

"2. The insurance does not apply

"(a) to any automobile (1) owned in full or in part by or registered in the name of the named insured or any member of the household thereof, other than a private chauffeur or domestic servant employed in connection therewith, nor with respect to the employer to any automobile owned in full or in part by him or registered in his name, or (2) hired as part of a frequent use of hired automobiles by or furnished for regular use to the named insured, a member of the household thereof, or a private chauffeur or domestic servant employed in connection therewith; nor, with respect to such employer, to any automobile owned in full or in part by him or registered in his name or hired by him as a part of a frequent use of hired automobiles;

"(b) to any insured other than as defined in paragraph (1); * * * Names of individuals, other than aforesaid husband and wife, who are relatives of and residents in the household of the named insured and who are to be covered hereunder as insured. The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges.

"Names         Premium
"Bodily Property
"Injury Damage."

No names were filled in under the last paragraph of the rider in the space left for that purpose.

The dispute between the parties is settled by the answer to the question whether the son, Elton Pulsifer, whose car Louis Pulsifer, the insured, was driving when the accident occurred, March 13, 1941, was at that time a "member of the household" of his father, Louis Pulsifer, *as that term is used in the policy.* If he was, the insurance policy issued by the plaintiff does not cover the liability of Louis for the accident—otherwise it does.

As to this question, the evidence shows that the son, Elton, twenty-five years old, married and with one child, had left the parental home some years before and found employment in various places in Maine until the latter part of 1940, when he was out of a job; but, having heard of a position in Lisbon which might be available later, and his resources being rather slender, it was decided between the women —the son's wife and his mother—that, pending developments in the matter of the Lisbon job, the young couple with the child should go to the home of the older couple, a farm owned by Louis Pulsifer, and live there, sharing expenses, until they could get located in Lisbon. The job was obtained by Elton in about two weeks after December 22, 1940, when he and his family moved into the father's house, and he and his wife at once tried to find a rent in Lisbon, but without success until the following June when they moved there, where they now reside. In the meantime Elton drove back and forth to his work, his father's farm being in Auburn. The father's family consisted of himself and wife. The home farm was not worked as such. There was no stock of any kind and not much of anything was raised on the place, the father, Louis Pulsifer, being something of an invalid and able to do very little work. His wife had a job in Auburn. The expenses of food and light were shared equally by the two families, a stated amount per week being contributed by each, and the excess, if any, of the expense divided. The women did most of

the business, each doing the shopping as convenient. The house was a single family house, of good size, each family having two bedrooms and sharing the kitchen and living-room. The young couple brought with them, and took away upon leaving, several pieces of furniture, including bedding, dishes, a bureau, chairs and the baby's crib. They had other furniture stored in the barn on the place and some in Naples. The elder Pulsifers drove their automobile and Elton drove his, it being used mostly in going back and forth to work.

While Louis Pulsifer was the householder, having title to the premises, no control was exercised by him or his wife (who was the wage-earner) over the young people. The son had a steady job which occupied him by day and often by night.

The cars were owned and used independently. The only time when Louis Pulsifer drove his son's car was on the occasion when this accident occurred. The young people had intended using their car to go to a moving picture theatre that evening and to get the milk on the way; but Elton, feeling too tired to go out, asked his father to take his, Elton's car, and do the errand. There is nothing in the evidence to indicate that either the father or the son could use the other's car without his consent.

### Conclusions of Law.

The interpretation and application of the language of the endorsement is facilitated by a consideration of its purpose.

The exclusion from coverage of other cars owned by the insured, as well as cars owned by members of his household, and the exclusion of cars "hired for regular use," as well as the language as a whole, would seem to indicate the intention of the Company to protect itself from a situation where an insured could pay for one policy and be covered by the insurance in driving any car that he decided to use, whether owned by him or members of his family or rented. In other words, cars under his control that he could use at will and might use often. Without some such exclusion it is obvious that the Company might lose premiums and also that the hazard under the insurance would be increased. That to avoid such results was apparently the idea of the agents of the

Company in writing this clause is admitted by its counsel.

The purpose on the part of the Company to extend the driver's regular insurance (without the payment of extra premium, as was the case here) only to casual driving of cars other than his own, and to make inapplicable the insurance when driving cars usually at hand which he could take instead of his own, and which he would be likely to use often—"make frequent use of", as the rider has it—is inconsistent with the contention of the plaintiff here because it implies a closer and more permanent connection between the insured and the car, and more control over it than appears to be the fact in this case.

The clause in question seems to be one only recently in vogue and I find no decisions precisely in point. Counsel have argued with much learning as to the meaning of the word "household". Ordinarily the word "household" is synonymous with "family", which Webster says is "The body of persons who live in one house and under one head or manager; a household, including parents, children and servants, and, as the case may be, lodgers or boarders." He defines "household" as "Those who dwell under the same roof and compose a family; a domestic establishment; family." Various definitions are given by Judge Savage in the case of Robbins v. Bangor Railway & Electric Co., 100 Me. 496-506, 62 A. 136, 141, 1 L.R.A.,N.S., 963. Whether the term "household" or "family" is used, the term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof; a "collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness."

Here two families came together temporarily until the newcomer could find another place of abode, which was expected to be a matter of only a few weeks. There was no one head of both groups; no permanence; no pursuit of a common object; no such union of the two families as would make them one. It was a temporary arrangement for the convenience of the son and his family while getting located elsewhere. Each family retained its own organization under its own head and did not merge to make one family or one house-

hold in any such way as the word is used in the policy.

It should not be overlooked that the language of this endorsement was framed by the Company itself which, by definition or otherwise, could have made the term "member of the household" less ambiguous.

"It is a general rule of law that an insurance policy must be interpreted to give effect to the intention of the parties so far as such intention can be discovered from the language of the policy and where the meaning of an insurance policy is fairly susceptible of two constructions, it should be construed most strongly in favor of the policy holder." Trinity Universal Ins. Co. v. Cunningham, 8 Cir., 107 F.2d 857, 860, and cases cited.

Counsel for plaintiff has cited some cases, like Cartier v. Lumbermen's Mut. Casualty Co., 84 N.H. 526, 153 A. 6, where in an automobile liability insurance policy exception was made of liability for accidents to members of the household of the insured. In these cases the purpose of the exception required the construction of the term "household" that was given. It was clear that the object of the wording in the policy was to exclude liability for accident to one who was so closely associated with the insured that a certain degree of collusion, or non-resistance, could be expected and was guarded against.

Looking at the purpose here, as well as the ordinary meaning of the words as applied to the facts, I am constrained to hold that the plaintiff is not entitled to a judgment that its policy did not cover the insured at the time of the accident; and therefore the plaintiff's petition must be dismissed with costs.