HARTFORD ACCIDENT & INDEMNITY COMPANY, Plaintiff,

v.

CASUALTY UNDERWRITERS, Inc., Defendant.

Civ. No. 4696.

United States District Court
D. Minnesota, Fourth Division.

April 7, 1955.

W. I. Jackman, Madison, Wis. and Wellington Tully, Minneapolis, Minn., for plaintiff.

C. A. Bassford, Minneapolis, Minn., for defendant.

DEVITT, District Judge.

This is an action between two insurance companies to determine the extent of their respective liabilities for amounts expended by Casualty Underwriters, Inc. in defending and settling an automobile liability claim against Reuben H. Wolstad, insured, and his son, Raleigh D. Wolstad, driver of the automobile involved in the accident.

Plaintiff, Hartford Accident & Indemnity Company, hereinafter referred to as

Hartford, seeks a declaratory judgment that it is not liable for contribution to defendant, Casualty Underwriters, Inc. In the same action, defendant counterclaims to recover a proportionate contribution plus expenses incurred in defending and settling the claim against the Wolstads.

The basic issue is whether the garage liability policy issued by Hartford to Reuben H. Wolstad in his capacity as a used car dealer covers the accident in question. Unless the Hartford policy covers this accident, Casualty Underwriters have no right to contribution.

The Hartford policy contained a rider defining the hazards covered so as to include

"* * * the occasional use for other business purposes and the use for non-business purposes of (1) any automobile owned by or in charge of the Named Insured and used principally in the above defined operations, and (2) any automobile owned by the Named Insured in connection with the above defined operations for the use of the Named Insured, a partner therein, an executive officer thereof or a member of the household of any such person."

To determine the question of coverage, we must examine the rider quoted above and decide whether the automobile involved in the accident was

(1) used principally in connection with Wolstad's used car business,

or

(2) owned by Wolstad in connection with the used car business for the use of a member of his "household."

■ It is elemental that the terms of the insurance policy govern the determination whether a given risk or hazard is covered by that policy or not. See Gudbrandsen v. Pelto, 1939, 205 Minn. 607, 610, 287 N.W. 116, 118.

■ Likewise it is well established that insurance policies, like other forms of contracts, will be interpreted as a reasonable man would understand them. See Tomlyanovich v. Tomlyanovich, 1953, 239 Minn. 250, 253, 58 N.W.2d 855, 857; Umbarger v. State Farm Mut. Automobile Ins. Co., 1934, 218 Iowa 203, 208, 254 N.W. 87, 88; Cartier v. Lumbermen's Mut. Casualty Co., 1931, 84 N.H. 526, 529, 153 A. 6, 8.

The claim against the Wolstads arose out of injury suffered by one James Dinger on October 30, 1952 in Burr Oak, Iowa, and resulted from the operation of a 1939 Chevrolet car owned at the time by Reuben Wolstad and driven by his son, Raleigh D. Wolstad. At the request of the Wolstads the defendant, Casualty Underwriters, assumed the defense of the personal injury action instituted as an outgrowth of the accident and subsequently settled it for $15,-000. It is agreed that this was a provident settlement.

At the time of the accident, policies of insurance issued by both the plaintiff and the defendant were in force. The defendant's policy was an automobile liability contract covering the Chevrolet car. This policy had been issued on June 1, 1952. Hartford had issued a garage liability policy on July 12, 1952.

Both insurance policies contained substantially identical "pro-rata" clauses providing that if the insured was covered by other insurance for the same loss, the insurer was not to be liable under his policy for more than his proportionate share.

At the time of the accident on October 30, 1952, and for some time prior thereto, Reuben Wolstad, the insured, was engaged in the sale of used automobiles from a lot in LaCrosse, Wisconsin. He had been separated from his wife, Doris, since 1946. Thereafter he did not sleep under the same roof with her. The wife lived with her two children at Mabel, Minnesota. Reuben lived in furnished quarters at LaCrosse. The evidence indicates that Reuben Wolstad furnished substantial financial support to his wife and sons during 1952 and preceding years. At the time of the accident a divorce action was pending between the

**58**

Wolstads. They were divorced in 1953 in LaCrosse County, Wisconsin.

Except for periods of attendance away at school, Raleigh D. Wolstad lived virtually all of the time at the home of his mother at Mabel, Minnesota. Occasionally he visited his father for one or two days at LaCrosse. On those occasions he stayed in his father's quarters.

The evidence showed that the car in question was purchased by Wolstad on June 2, 1950. It was licensed in Minnesota in 1950, 1951 and 1952. The Casualty Underwriters Liability policy insuring it was purchased in Minnesota through the Odell Lee Agency. The car was kept most of the time at Mrs. Wolstad's home in Mabel, Minnesota. Occasionally it was kept for a few days at Wolstad's used car lot in LaCrosse. The car was used principally for the use and convenience of Mrs. Wolstad and the son, Raleigh. On occasions Wolstad had opportunities to sell the car but did not do so because he could not secure an adequate price for it and because he could not buy one of equal value for the price obtainable.

 From all of the evidence, the court readily concludes that the Chevrolet car was not used principally in connection with Wolstad's used car business, but on the contrary, was used principally to afford transportation to his family. "Principally" is synonymous with "mainly", "chiefly", "in the main". McGill v. Baumgart, 1939, 233 Wis. 86, 288 N.W. 799.

The second question for determination is whether the car was owned by Wolstad in connection with his used car business for the use of a member of his "household."

The most direct route to an answer to this query is to determine if Raleigh D. Wolstad, the son, was a member of his father's "household." Since the court is of the view that he was not, it is unnecessary to determine the associated question as to whether the car was owned by Wolstad "in connection" with his business.

Judicial definitions of the term "household" are legion, especially in the field of insurance. Black's Law Dictionary 4th Ed. (1951) defines "household" as:

"A family living together * * Those who dwell under the same roof and compose a family * * * A man's family living together, constitutes his household, though he may have gone to another state * * * * "

Frequently quoted by the courts is Webster's definition of "household" as:

"Those who dwell under the same roof and compose a family; a domestic establishment; family."

The courts have constantly stressed the common "living under one roof" as a signal characteristic of a household. That was true in Tomlyanovich v. Tomlyanovich, 1953, 239 Minn. 250, 58 N.W. 2d 855 involving brothers, and Engebretson v. Austvold, 1937, 199 Minn. 399, 271 N.W. 809, involving a mother and widowed daughter, and Cartier v. Lumbermen's Mut. Casualty Co., 1931, 84 N.H. 526, 153 A. 6, also involving brothers.

 In this case Reuben Wolstad and his wife, Doris Wolstad, were clearly not members of the same household nor had they been since 1946. She lived in Mabel, Minnesota; he lived in LaCrosse, Wisconsin. A husband and wife who are separated and not living together are not members of the same household. Fleming v. Travelers Ins. Co., 206 Miss. 284, 39 So.2d 885; Milwaukee Mechanics' Ins. Co. v. Hefferman, 1929, 121 Ohio St. 499, 169 N.E. 573. In each of these cases an estranged husband living apart from his wife, but who drove the wife's automobile, was held not to be a member of the wife's "household" within the meaning of the inclusionary clauses in the insurance policies covering the car.

 The son, Raleigh, except for visits of a day or two at a time with his father in LaCrosse, lived under his mother's roof and accordingly was a member of her "household" and was not a mem-

ber of his father's "household." Raleigh's temporary visits of a day or two with his father did not make him a member of his father's "household." Lumbermens Mut. Casualty Co. v. Pulsifer, D.C.1941, 41 F.Supp. 249.

It follows that the coverage quoted in the rider of the Hartford garage policy did not cover the accident in question, and hence that the defendant is not entitled to contribution from Hartford.

This conclusion obviates the necessity of considering defendant's counterclaim for reimbursement of a portion of its expenses in settling the personal injury claim against the Wolstads.

Findings of Fact, Conclusions of Law, Order for Judgment and form of Judgment may be prepared accordingly.