Valta Sue **JOHNSON**, Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**, a corporation, Appellee.

No. 15769.

United States Court of Appeals
Eighth Circuit.

Feb. 18, 1958.

**159**

injuries received by her because of the alleged negligence of one William W. Powers while she was being transported in an automobile owned by her father, Floyd Potter, and driven by said Powers with her father's consent. The automobile was a 1948 Dodge sedan and the State Farm Mutual Automobile Insurance Company, appellee herein, had issued a liability insurance policy to Floyd Potter covering the automobile, which policy was in full force and effect at the time of the accident. This insurance policy contained provision that the appellee would pay on behalf of the "insured" all sums which the insured became legally obligated to pay as damages because of bodily injuries caused by accident arising out of the use of the automobile. The policy also provided that the unqualified word "insured" used therein "includes the named insured and also includes any person while using the automobile * * *, provided the actual use of the automobile is by the named insured or with his permission." Under Section (e) of Exclusions it was provided that coverage did not apply "* * * to the insured or any member of the family of the insured residing in the same household as the insured".

Following her accident appellant brought action against William W. Powers, the driver of the automobile, in the state court to recover damages for the injuries she had suffered because of the alleged negligence of said Powers. In that action she recovered judgment in the sum of $17,000 and that judgment had become final and was wholly unsatisfied at and prior to the time of the institution of the present action. The appellee denied liability under its policy and therefore refused to defend Powers in the state court action. Subsequent to the entry of the state court judgment and prior to the institution of the present action appellee, on demand, refused to pay appellant the sum of $10,000, its limit under said policy.

Appellant then brought this action against Powers and State Farm Mutual Automobile Insurance Company, the ap-

Frank W. Hayes, Sedalia, Mo. (Hayes & Durley, Sedalia, Mo., was with him on the brief) for appellant.

Fred F. Wesner, Sedalia, Mo. (Wesner & Wesner, Sedalia, Mo., was with him on the brief) for appellee.

Before GARDNER, Chief Judge, and JOHNSEN and VOGEL, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from a judgment dismissing plaintiff's complaint in an action wherein plaintiff, appellant herein, sought to recover judgment against State Farm Mutual Automobile Insurance Company on account of personal

pellee herein, seeking to reach and apply the sum of $10,000 toward the satisfaction of her said judgment. In her complaint she alleged that the defendant Powers was an additional insured under the provisions of the liability insurance policy covering the automobile in which she was being transported at the time of receiving her injuries.

William W. Powers defaulted and appellee in its answer denied liability alleging no coverage existed under its policy of liability insurance issued to Floyd Potter for personal injuries sustained by appellant and further alleged that appellant was a "member of the family of the insured residing in the same household as the insured".

The action was tried to the court without a jury and the court found all the issues of law and fact in favor of the appellee and specifically found that appellant at and prior to the time of the accident was a member of the named insured's family but that it did not appear from the evidence who was the common head or manager of the household but that " * * * it is clearly established, and the Court so finds, that all the members thereof made common use of the establishment in question and lived therein, caring for each other reciprocally, from natural, moral obligations".

The paramount issue of fact on this appeal is whether appellant at the time of receiving her injuries was a member of the family of Floyd Potter, the assured, residing in the same household as the assured within the provisions of the policy. The court answered this inquiry in the affirmative and its findings are presumptively correct and will not be disturbed on appeal unless clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C. In considering the sufficiency of the evidence to sustain the findings of the court the evidence must be viewed in a light most favorable to the prevailing party. Sherman Inv. Co. v. United States, 8 Cir., 199 F.2d 504; Linscomb v. Goodyear Tire & Rubber Co., 8 Cir., 199 F.2d 431.

It appears from the evidence that at and for a long time prior to March 19, 1955, the date of the accident, Floyd Potter, the named insured, resided in a nine room house on a farm owned by his brother, Higdon Potter, who, with his wife, also made their home in the same house at said times. Higdon Potter was not locally employed but was a superintendent for a paving construction company and he and his wife were absent from their home about six months a year. Appellant, daughter of the named insured, prior to her marriage in April, 1953, lived in the same house on the farm as a member of Floyd Potter's family. At the time of her marriage her husband was a member of the Armed Forces. After her marriage appellant continued to live in the above household with the named insured and the Higdon Potters until September, 1953, when she went to Colorado to be with her husband. About the first of April, 1954, she returned to the farm after her husband was transferred overseas. From that date she continued to live at this home until sometime after the date of the accident. During the last-mentioned period of time appellant considered the farm as "my home" because she had no other place to stay while her husband was overseas. Appellant and her aunt, Mrs. Higdon Potter, did the housework and cooking and all the members of the household ate their meals at a common table. Appellant did not pay any board but did contribute some of the groceries, "whenever we needed groceries, or I felt like there was something I wanted". The sole purpose of her trip to Colorado was to be with her husband and when his army service was ended there she returned to the house of her father, Floyd Potter, whence she had left to go to Colorado in the first place, and again took up her position as a member of the household occupying her old bedroom as before and having and enjoying the same family relationships in the home and household as she had since childhood. Higdon Potter, the owner of the house where all the

Potters lived, called as a witness on behalf of appellant, testified that when they had company they all sat down with the company at the common table together and that there was no rule against any one or the other restricting or not allowing any one of them to go into one part or the other part of the house as among himself, his wife, Floyd Potter or appellant. He was then interrogated and made answer as follows:

"Q. In other words, each one of you had bedrooms which were understood to be yours and Mrs. Potter's and some other bedroom in the house was understood to be Valta Sue's and some other bedroom understood to be Mr. Floyd Potter's?

"A. That is right. And the rest of the house downstairs, the living room, kitchen and dining room, that would be a joint affair, anybody would have the same privileges.

"Q. When you said 'joint' you mean 'common'?

"A. Yes, sir.

"Q. Including Floyd, Valta Sue, yourself and wife?

"A. Yes."

Mrs. Higdon Potter, also called as a witness on behalf of appellant, testified that there was only one kitchen, one cook stove and one dining room, and that they all ate their meals together—"It was a family affair"; that the laundry was done for all the members of the household and that all members of the household looked at the television set which was in the living room downstairs whenever they wished.

It is contended by appellant that the finding of the court that there was no common head or manager of the household precluded a finding that appellant was a member of the family of Floyd Potter residing in the same household as Floyd Potter. The short answer to this contention is that the court did not so find. The court only found that it did not appear who was the common head or manager of the household. This is far from a finding that there was no common head or manager of the household. The court in this connection did find that:

"That terms 'family' and 'household' as used in Section III(e) thereof, must be construed in their primary sense and as commonly understood. When so construed, they qualify each other as synonyms, and make reference to a collective body of persons, consisting of parents, or children, or other relatives, domestics, or servants, residing together in one house, upon the same premises as one domestic establishment. Cf. Peterson v. National Council of K. & L. of Security, 189 Mo.App. 662, 175 S.W. 284; Wentz v. Chicago, B. & Q. R. Co., 259 Mo. 450, 168 S.W. 1166, 1172."

The word "family" is a very flexible term. It has frequently been defined as such persons as habitually reside under one roof and form one domestic circle. Here appellant lived under the same roof as the insured and the Higdon Potters and their relations were of a permanent domestic character. Appellant had resided in this household as her home since her early childhood and she had never had any other home. The meaning to be given to the term "family" depends to a greater or less extent on the intention of those using the term. The term "family" or "household" cannot be so limited and strait-jacketed as always to mean, regardless of facts and circumstances, a collective body of persons who live in one house under one common head or manager. Here the manifest purpose of the exclusion clause was to limit the liability of the insurance company. Peterson v. National Council of K. & L. of Security, 189 Mo.App. 662, 175 S.W. 284; Wentz v. Chicago, B. & Q. R. Co., 259 Mo. 450, 168 S.W. 1166; Logan v. Saint Louis Police Relief Ass'n, Mo.App., 133 S.W.2d 1048; Arthur v. Morgan, 112 U.S. 495, 5 S.Ct. 241, 28 L.Ed. 825; State Farm Mut. Automobile Ins. Co. v. James, 4 Cir., 80 F.2d 802; Farm Bureau Mut. Automobile Ins. Co. v. Violano, 2 Cir., 123 F.2d 692; Ocean

Accident & Guaranty Co. v. Schmidt, 6 Cir., 46 F.2d 269; Cartier v. Lumbermen's Mutual Casualty Co., 84 N.H. 526, 153 A. 6; Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N.W.2d 855, 50 A.L.R.2d 108. In Farm Bureau Mut. Automobile Ins. Co. v. Violano, supra, it was contended that the term "family of the insured" included only a group having one head or manager. In answering this contention the court among other things said [123 F.2d 695]:

" * * * Farm Bureau argues that 'his household' must be taken to mean 'a household of which he is the head.' We cannot accept that construction. In normal speech, one's household is the familial or residential group with which one lives; a wife or child, as well as the pater familias, has a household. The purpose of excepting cars owned by members of J. Alan's household was to reduce insurer's risk; * * *."

In passing it should be noted that none of the decisions cited by appellant are insurance cases and they are readily distinguishable in their facts from the instant case. There was doubtless some definite purpose in including in the insurance policy the restrictions embodied in Exclusion (e). As said in Cartier v. Lumbermen's Mutual Casualty Co., supra [153 A. 7]:

"In considering the purpose of the excepting clause of the policy it is clear enough that it was meant to avoid the insurer's liability to indemnify for injuries to members of the insured's household, whether or not he was its head. The natural tendency of one insured to strengthen or enlarge the evidence of liability to members of his household for accidents insured against increases the hazard of liability under the policy in such cases over that for accidents to others. Without actual dishonesty, the disposition to favor those close to one reflects itself in opinions and judgments, and one insured is more likely to concede by admission or nonresistance blame for hurting a member of his household than for doing harms to others."

The same thought is expressed in State Farm Mutual Automobile Ins. Co. v. James, supra, where it is said [80 F.2d 803]:

"Obviously the exception was intended to restrict the company's liability, and the specific purpose was to safeguard the company against the natural and inevitable partiality of the assured to an injured person if he should happen to be a member of the same family circle."

We think the finding and conclusion of the trial court that appellant was a member of the family of the assured, residing in the same household as the assured, is sustained by abundant evidence.

We think there is no merit in the contention that the marriage of the appellant emancipated her from the family group. She was but temporarily absent from the group, she established no other home, she resumed her original relation to the family group and that relation existed with slight interruption during practically all of her active life and certainly existed at the time of the accident here involved. As said in Ocean Accident & Guaranty Co. v. Schmidt, supra [46 F.2d 270]:

"In Arthur v. Morgan, 112 U.S. 495, 499, 5 S.Ct. 241, 243, 28 L.Ed. 825, the court said: 'Persons who dwell together as a family constitute a "household."' See also Poor v. Hudson Ins. Co. (C.C.) 2 F. 432, 438. We do not doubt that a son living under the parental roof is a member of the household even though he has reached his majority and supports himself, * * *."

In that case the son had not only reached his majority but he was supporting himself, yet the court held these facts did not necessarily emancipate him from the household group.

Appellant contends that the court was in error in suggesting that the case of

Perkins v. Perkins, Mo.App., 284 S.W.2d 603, 610, compelled the entry of judgment for appellee. It is first to be noted that the expression now complained of was made not in the decision of the case but in denying appellant's motion for new trial. In the decision of the case the trial court, in referring to the decision in the Perkins case, said:

"Where such relation exists and such provision is contained in a policy of insurance, the person so injured stands in the same position as an 'insured', and is subject to the same restricted coverage as an 'insured.' "

Conceding that the relation of appellant as a member of insured's family was established by the evidence, we think the ruling in the Perkins case was controlling. The Perkins case did not deal with the question of whether or not a family relationship existed but whether the plaintiff in that case could maintain an action against the additional insured. In any event, the question on this appeal is not whether or not the court in denying appellant's motion for new trial properly referred to the scope of the Perkins case, but whether the judgment appealed from is right.

■ It is urged by appellant that she was entitled to recover judgment against Powers because, as the driver of the insured's automobile with his consent, he was an additional insured under the terms of the policy and she was not a member of his family or household. We think this contention is ruled against appellant by the decision in Perkins v. Perkins, supra. That was a case in which the assured sought to recover against the additional insured. The terms of the liability policy were identical with those in the instant case. In the Perkins case the trial court had held that the insured could not recover from the additional insured. In affirming the decision of the trial court, the court among other things said:

"In view of the foregoing we find the result reached by the trial court correctly interprets the policy in suit and our own act; that it follows and adopts the majority rule prevailing in most of the United States and we are unable to find sufficient grounds to disturb it."

On petition for rehearing in the Perkins case the court cited with approval the case of Pearson v. Johnson, 215 Minn. 480, 10 N.W.2d 357, and in referring to it said:

"In that case the court without hesitation approved the exclusion clause and from a study of the context of the policy there set out and considered we feel no other course was possible."

In Pearson v. Johnson, supra, the liability policy was substantially identical in its provisions with the policy here involved. In that case, as in the case at bar, a member of the family of the named insured sought to recover from the additional insured. In the course of the opinion in that case the court said, inter alia [215 Minn. 480, 10 N.W.2d 358]:

"Western premises its argument that it is but secondarily liable upon the contention that Johnson was an 'additional' insured under the terms of Pearson's policy with State Farm Mutual and that the provisions in subsection (e) thereof excluding from coverage 'the insured or any member of the family of the insured' refer to Johnson and that therefore Ruth Pearson's action against Johnson is not excluded, she not being a member of his (Johnson's) family or household. Certainly the language used in the policy cannot be given such a strained and limited meaning. The word 'insured' is defined by the policy itself to include for the purposes named at all times the named insured, Pearson. That the policy gives it broader application so as to include persons driving with the named insured's consent cannot be said to wipe out the exemptions expressly incorporated into the policy to prevent the insured.

that is, the named insured and his family from recovering for their own injuries. The policy is essentially a liability and not an accident policy. It is a contract between Pearson and the State Farm Mutual Automobile Insurance Company, by the terms of which the latter agrees to protect the former against liability incurred at the suit of anyone outside his own family or household. Mrs. Pearson is a member of the named insured's household and family and as such is expressly excluded from coverage. The policy provisions creating additional assureds cannot change the essential contract between Pearson and his insurance company. Certainly they cannot be read so as to nullify the express exclusions of the policy."

██ The Perkins case, by approving the decision in Pearson v. Johnson, supra, in effect declared it to be the law of Missouri and we are cited to no decision of the Missouri appellate courts to the contrary and we have found none. As this is a diversity of citizenship case the law of Missouri is controlling. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. It is, however, argued that as the Perkins case was decided by the Kansas City Court of Appeals and not by the Supreme Court of the state, it is not binding upon us, except to the extent of the precise question decided. In West v. American T. & T. Co., 311 U.S. 223, 61 S.Ct. 179, 183, 85 L.Ed. 139, the Supreme Court considered the scope of inquiry and the method of determining the applicable state law. In that case it is said:

"A state is not without law save as its highest court has declared it. There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them. In those circumstances a federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is unsound in principle or that another is preferable. State law is to be applied in the federal as well as the state courts and it is the duty of the former in every case to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however, superior it may appear from the viewpoint of 'general law' and however much the state rule may have departed from prior decisions of the federal courts. See Erie Railroad Co. v. Tompkins, supra, 304 U.S. 64, 78, 58 S.Ct. 822, 82 L.Ed. 1188; Russell v. Todd, supra, 309 U.S. 293, 60 S.Ct. 533, 84 L.Ed. 754.

"Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."

There may therefore be a conflict between the decisions of a particular Federal Court of Appeals. As the Federal Court of Appeals must follow the law of the state in which the litigation arises its decisions will necessarily vary as the laws of the states within its jurisdiction may vary.

We have considered all the other contentions of the appellant and are of the view that they are without merit. The judgment appealed from is therefore affirmed.